**26**

UNITED STATES, Appellee,

v.

Robert F. KLEIN, Staff Sergeant, U.S. Marine Corps, Appellant.

No. 49254.

NMCM 83 2106.

U.S. Court of Military Appeals.

May 13, 1985.

For Appellant: *Carl J. Felth, Esq.* (argued); *Lieutenant Commander William A. DeCicco, JAGC, USN* (on brief); *Lieutenant Commander Frederick N. Ottie, JAGC, USN.*

For Appellee: *Lieutenant Commander John B. Holt, JAGC, USN* (argued); *Captain W.J. Hughes, JAGC, USN* (on brief).

*Opinion*

COX, Judge:

Appellant was tried by a special court-martial composed of officer and enlisted members and a military judge on September 16–17, 1982, at Marine Corps Recruit Depot, Parris Island, South Carolina. Contrary to his pleas, he was found guilty of making false official statements, assault and battery, solicitation of an assault, and solicitation of others to make a false official statement, in violation of Articles 107, 128, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 907, 928, and 934, respectively. He was sentenced to a bad-conduct discharge, confinement at hard labor for 3 months, forfeiture of $367.00 pay per month for 3 months, and reduction to pay grade E-1. The convening authority approved the sentence as adjudged but suspended the forfeitures for 6 months. The United States Navy-Marine Corps Court of Military Review affirmed.

The critical factual issue [1] in this case was whether appellant had the requisite criminal intent for the offenses for which he was convicted. Character evidence may be relevant to disprove the existence of such criminal intent. *See* 1A Wigmore, *Evidence* § 56(3) at 1173–74 (Till-

---

1. In addition to the issue discussed hence, we also specified the following issue:

   WHETHER THE EVIDENCE IS SUFFICIENT AS A MATTER OF LAW TO CONVICT APPELLANT OF SPECIFICATION 2 OF CHARGE I.

   After consideration of the record, and the briefs and argument of counsel, we hold that there was sufficient evidence to sustain appellant's conviction.

ers rev. 1983). With regard to similar offenses, this Court has held military character is relevant. *See United States v. McNeil*, 17 M.J. 451 (C.M.A. 1984); *United States v. Piatt*, 17 M.J. 442 (C.M.A. 1984). We agree with the Court of Military Review that such evidence was "improperly excluded" in the present case. Unpublished opinion at 3.

We also agree with the Court of Military Review that the error in excluding the evidence was harmless beyond a reasonable doubt. *See United States v. Vandelinder*, 20 M.J. 41 (C.M.A. 1985).

Using the analysis we adopted in *United States v. Weeks*, 20 M.J. 22 (C.M.A. 1985), *cf. United States v. Lewis*, 482 F.2d 632, 637 (D.C. Cir. 1973), we conclude that there was overwhelming evidence of the criminal acts constituting the charged offenses and that, from the acts, one can infer the requisite criminal intent. Although the Government's case was circumstantial on the issue of criminal intent, appellant not only denied the intent, but his commanding officer was allowed to testify on this issue. He stated, regarding a briefing given by appellant:

A. I was the Commanding Officer of "D" Company at the time. Staff Sergeant KLEIN was in squad bay B–2 of "D" Company. ... right next door to the Company Commander's office. ... and it's very easy to hear everything that goes on in the DI house that is conducted in normal conversational tones.

Q. ... , do you know basically who was there during that briefing?

A. I didn't see who was taking part in the conversation. From what—from the voices I heard and from what Staff Sergeant KLEIN was saying it sounded as if it was the Platoon leaders, the guide and the squad leaders.

\* \* \* \* \* \*

A. The only voice I heard was Staff Sergeant KLEIN's.

Q. And what did Staff Sergeant KLEIN say?

A. It was approximately about a ten minute brief that he gave his recruits. It dealt with the ICT . . . you know, the different training evolutions they were going through ... He noted the fact that recruit leaders would have more responsibility while they were at ICT. They would lead their squads through various courses ... and they would be given more responsibility than what they had in the rear.

Q. What was discussed about problem recruits, if anything?

A. Towards the end of the conversation he began to talk about what would happen when the Platoon came back from ICT, that ... they'd have to make a decision to keep the recruits, recommend recycling them, whatever. He told the squad leaders and the guide that he wanted them to work with the recruits, get them squared away.

Q. He did use the term "squared away"?

A. Yes, he did, and hopefully the problem Privates and Privates that were having difficulties would come up to speed and be able to graduate with the Platoon, and if not, another decision would have to be made on them.

Q. What if anything did Staff Sergeant KLEIN tell the billet holders not to do?

A. As kind of an aside he used the term—what he said was: "I want you to work with these individuals. I want you to square them away. I don't want to see any broken bones or blood or anything like that. I just want you to work with them."

Q. Did it appear that he was advocating physical abuse?

A. Not at all.

Q. And what would you have done if it had appeared he was advocating physical abuse?

A. I would have stepped into the DI house immediately, told the recruits to leave, and I would have suspended Staff Sergeant KLEIN on the spot.

Q. Now, was it necessary to intervene at this time?

A. Absolutely not.

Q. And why not?

A. I felt Staff Sergeant KLEIN was giving a very good brief, a brief that I would like to have heard other of my drill instructors use. He always talked to his Privates more as a Platoon Sergeant would do out in the Fleet, rather than, say, a drill instructor oftentimes down here does. I thought he was giving a very good brief, telling them what they were responsible for. Everything was very proper, very appropriate, and I felt that he was just using a figure of speech when he said that. Like I said, it was over like that, it was just something he just—an aside to what he was telling these Privates to do, and not something he was telling the Privates to take literally, just like when a drill instructor goes to pugil sticks he tells his recruits he wants to kill the other Platoons. Well, everybody knows he doesn't actually want to kill the other Platoon, it's just a figure of speech.

While the defense theory was not patently "feeble or implausible," *United States v. Weeks, supra* at 25, it was obviously not accepted by the finders of fact even though corroborated by the accused's commanding officer. Finally, although "the quality of the" character evidence offered was substantial, the record is clear that appellant's good military character was certainly before the court members prior to findings and provided an adequate substitute.[2]

The decision of the United States Navy-Marine Corps Court of Military Review is affirmed.[3]

Judge FLETCHER did not participate.

EVERETT, Chief Judge (concurring in the result):

Like the Court of Military Review and the principal opinion, I conclude that appellant was entitled to have the court members consider, on the issue of guilt or innocence, the opinion evidence about his good military character contained in his fitness reports and his service record book. However, rather than relying on the doctrine of harmless error, I rest my decision to affirm on waiver.

After the Government rested, the defense offered in evidence Staff Sergeant Klein's fitness reports and service record book (defense exhibits A and B for identification). Trial counsel objected to this documentary evidence because, under the Military Rules of Evidence, it was admissible only as to "a pertinent character trait, and general military character" was not relevant on the merits of the case. The military judge then observed "that even if general military character is admissible the Rules of Evidence limit that to opinion or reputation evidence"; and he inquired why

---

**2.** For example, the record indicates that Sergeant Klein appeared in the appropriate service uniform with all awards and decorations; his commanding officer testified that his conduct was very proper, analogizing his conduct to that of "a Platoon Sergeant ... out in the Fleet." He also testified as to Klein's military integrity. In addition, the military judge invited defense counsel to call Klein's rating officer to express an opinion as to his military character, but the invitation was not pursued.

**3.** I take no exception to Chief Judge Everett's opinion concurring in the result, as a fair reading of the record supports waiver. I am sensitive, however, to the limited and narrow approach of the military judge here and can understand how trial defense counsel may have been confused as to how far he could have gone with his evidence. Counsel should not hesitate, in the zealous representation of their clients, to pin the military judge down to preserve an issue. To do this, counsel must, at a minimum, make an offer of proof, which was not done in this case.

the defense believed "these documents are admissible under those circumstances." Defense counsel replied that the defense exhibits contained the opinion of "the reporting senior" as to "the military character of the person being reported on." Thereupon, this colloquy took place:

MJ: Trial counsel also has the right to cross-examine those witnesses. If you want to call those witnesses for reputation evidence I will consider it.

DC: I can do that as well, sir.

MJ: Well, at this point I will reserve ruling on Defense Exhibits A and B for Identification.

During the direct examination of Captain Richard Mills, the first defense witness, defense counsel asked about his "opportunity to observe" appellant's work. Trial counsel objected because:

We haven't yet gotten a ruling on general military character on the merits. You have reserved ruling on the documents, and my understanding is that you are reserving ruling on the issue.

The military judge replied:

Well, at this point I haven't heard what the opinion is going to relate to, Captain. At this point I don't even know that we're getting into general military character. There are other things that this witness might testify about.

Shortly thereafter, defense counsel asked Captain Mills, "Were you able to assess his military integrity?" The witness replied, "I found Sergeant KLEIN to be trustworthy—." Then the military judge interrupted:

Just a minute here, now. What we're talking about here is peacefulness. I believe one of the elements relates to deceit, so there may be some question in regard to honesty. I am not going to allow you to get into specifics. Proceed.

Defense counsel next asked Mills, "Could you tell us what your opinion is of Staff Sergeant KLEIN as it relates to his military integrity in a little more detail?" Then this discussion occurred:

MJ: Just a minute, what is that supposed to mean, whether or not he's truthful?

DC: Yes sir.

MJ: Well, the witness hasn't testified, and I'm not going to have this witness testify about truthfulness.

Defense counsel asked no further questions of Captain Mills as to appellant's character.

After four defense witnesses testified about the lack of veracity of Sergeant Daniel Downs, a principal prosecution witness, the military judge announced in an Article 39(a), Uniform Code of Military Justice, 10 U.S.C. § 839(a), session that he was "not going to allow Defense Exhibits A and B"—the fitness reports and service record book. He amplified his ruling in this way:

I think Rules 405 and 404 speak in terms of methods of proving character for an accused in a trial of this nature. Now, I'm willing to give you some leeway in this case. Although the analysis seems to indicate that general military character is not admissible, I'm willing to allow you to offer such evidence ... but ... I will allow an offer of such opinion or reputation type evidence—but I will not allow the factual basis upon which those opinions are being offered. So if you want to do that, I will allow that.

Additionally, since Rule 405c allows for affidavits, particularly when they are being offered by the defense, I will allow you to offer that type of reputation or opinion evidence through written documents, but again, not to the extent that is provided in the fitness reports. So I'm willing to give you some leeway, but not to the extent of allowing these documents, and certainly the same will apply in addition to the evidence, character evidence that may be considered pertinent to the offenses in this case; certainly would extend to truth and veracity. If you wanted to offer opinion or reputation evidence in that area, I'm willing to allow that also.

Then, a few minutes later the judge noted:

Now, defense counsel, if this matter should go to the sentencing portion of

the trial, certainly Defense Exhibits A and B for Identification will be certainly admissible at that point. I think the record has already reflected that Staff Sergeant KLEIN is in the appropriate service uniform with all the awards and decorations, so there's a great deal of military character being worn on his chest anyway.

Captain Mills was not recalled as a character witness and no further attempt was made by defense counsel to introduce evidence of appellant's good military character prior to findings. After findings, the documents previously offered by the defense were received in evidence; and Captain Mills and First Sergeant Daniel J. Bradley testified about Klein's outstanding performance of duty.

As will be apparent from the preceding narrative, the military judge did not categorically exclude evidence of Klein's good military character. Instead, unlike the trial judges in *United States v. McNeil*, 17 M.J. 451 (C.M.A. 1984); and *United States v. Piatt*, 17 M.J. 442 (C.M.A. 1984), he ruled that opinion and reputation evidence of good military character would be admissible. Moreover, he noted that affidavits would be admissible and that he would give leeway to the defense, "but not to the extent of allowing these documents." The judge apparently was sensitive to some of the concerns expressed later by this Court in *United States v. Vandelinder*, 20 M.J. 41 (C.M.A. 1985), as to the disposition of fitness reports, service records, and similar

* *United States v. Goode,* 1 M.J. 3 (C.M.A. 1975).

documents proffered as defense evidence of good military character.

Since the military judge left the door open for the admission of character evidence but the defense made no further effort to offer such evidence, I believe the issue was waived. In this connection, I note that, when a *Goode* * response was submitted by the Marine attorney who, at appellant's request, was assigned to represent him after trial, this lawyer recognized that the judge had not barred the introduction of defense evidence of good military character. In contending that appellant had received ineffective assistance of counsel, he stated:

> In addition, the defense would point out that, after the Military Judge initially refused to admit proffered character evidence, trial defense counsel failed to renew his offer thereof. This was consistent with his lackadaisical approach to this whole case.

I am unwilling to assume that the failure of defense counsel demonstrated incompetence on his part, for he may well have concluded that the various medals and decorations worn by Klein at his trial sufficed to demonstrate his good military character to the court members. However, I conclude that, in light of the military judge's ruling, the failure of the defense counsel to renew the offer of character evidence must, under the circumstances of this case, be construed as a waiver of the issue.