UNITED STATES, Appellee,

v.

Gary R. HURST, Major, U.S. Air
Force, Appellant.

No. 62,739.
ACM 26785.

U.S. Court of Military Appeals.

March 19, 1990.

For Appellant: *Captain Mark R. Land* (argued); *Colonel Richard F. O'Hair* (on brief).

For Appellee: *Captain James C. Sinwell* (argued); *Colonel Joe R. Lamport, Major Terry M. Petrie* (on brief); *Captain Morris D. Davis.*

*Opinion of the Court*

SULLIVAN, Judge:

In August 1987 appellant was tried by a general court-martial composed of members at Hickam Air Force Base, Hawaii. Contrary to his pleas, he was found guilty of committing sodomy on divers occasions upon his stepdaughter, a female under the age of 16, in violation of Article 125, Uniform Code of Military Justice, 10 USC § 925. He was sentenced to dismissal. The convening authority approved the sentence as adjudged. The Court of Military Review affirmed the findings and sentence in an unpublished opinion dated January 6, 1989.

This Court granted review of the following issues:

I

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT BY NOT ALLOWING THE DEFENSE TO CROSS–EXAMINE THE ALLEGED VICTIM ON SPECIFIC PAST SEXUAL BEHAVIOR.

II

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT BY NOT ALLOWING APPELLANT TO PRESENT EVIDENCE OF HIS GOOD MILITARY CHARACTER IN THE FORM OF HIS OERS [OFFICER EFFECTIVENESS REPORTS].

III

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT BY RULING THAT HEARSAY TESTIMONY WAS A PRIOR CONSISTENT STATEMENT.

We hold that no prejudicial error occurred when the military judge prevented appellant from introducing his OERS on the merits of this case. *See United States v. Wilson,* 28 MJ 48 (CMA 1989); *United States v. Weeks* 20 MJ 22, 25 (CMA 1985). Otherwise, we find no error of any kind in the challenged rulings of the military judge.

The evidence of record shows that in June 1986, appellant's wife went to visit her mother in Florida, leaving her husband at home in Hawaii. He later executed a sworn statement and admitted that during his wife's absence, he awoke from an alcohol-induced sleep to discover himself basically engaged in mutual oral sodomy with his 15–year–old stepdaughter, T. He stated that when he realized that his sex partner was not his wife, he "pushed her off" and sent the stepdaughter to another room. He further stated that his stepdaughter attempted to repeat this conduct shortly before his wife was scheduled to return from Florida.

On September 19, 1986, T was discovered unconscious on the bathroom floor of her home. At the hospital, she was discovered to be heavily intoxicated with a blood alcohol level of .1937. While in the Emergency Room, with both parents present, T stated, "I hate you, Daddy, I hate Daddy because while Mom was gone this summer, you molested me." Eventually, appellant admitted to his wife that he had engaged in the acts of sodomy noted earlier.

At trial, defense counsel indicated that he wished to explore T's sexual history. He specifically wanted to question her about her first sexual experience with RT when she was 14 years old; her regular sexual conduct with her current boyfriend GN; her attempt to obtain birth control pills; and her attempted use of appellant to divert her mother from the house so that

she could engage in sexual intercourse with GN. During the subsequent session under Article 39(a), UCMJ, 10 USC § 839(a), defense counsel also elicited information concerning T's sexual encounters with her adopted brother JH and her half-brother SC.

The defense averred this evidence to be relevant for the following reasons:

> Your Honor, we have two purposes for this. One goes to the motive to fabricate and that is that [T] had either actually been sexually molested many times in the past or she has made up a lot of this information in order to get what [T] wants. In other words, later on the evidence will establish that [T] got [JH] out of the house because—after she made these allegations against him. And further testimony from witnesses will show that there were other allegations of molestation even earlier in her life. It also will—if we ever should happen to get to a sentencing phase—it will become obvious that we could use it at that point. In addition—and it also, well it could go on the merits if the government then brings in a social worker that they have that is going to talk about the rape-trauma syndrome. We could show that [T] has had other instances of sexual behavior that could have given her this rape-trauma syndrome.

After further development of the concerns raised above, the military judge rendered, in relevant part, the following ruling:

> The offenses alleged involving [T] fall within the scope envisioned by Military Rule of Evidence 412, [Manual for Courts–Martial, United States, 1984] and therefore its provisions concerning the admissibility of evidence are applicable. The evidence of past specific instances of sexual behavior between the alleged victim, [T] and her stepbrothers occurring in the late 1970s and early 1980s is too remote from this incident to have sufficient probative value to outweigh the danger of unfair prejudice. The evidence of past specific instances of sexual be-

havior between the alleged victim, [T], and [RT], has been shown to have only minimal relevance and its probative value is far outweighed by the danger of unfair prejudice. Now the evidence of past specific instances of sexual behavior between the alleged victim, [T], and [GN] are not sufficiently relevant to outweigh the danger of unfair prejudice.

> Now in discussion, I would like to state that the defense has proffered this evidence to show, 1, knowledge of the alleged victim of certain sexual acts and, 2, the victim's motive to fabricate because of the accused's attempts to stop her affair with [GN]. Now, with that in mind, the specific instances of sexual behavior have little relevance to the purported defense's purposes and there is a clear danger of circumventing Military Rule of Evidence 412 and allowing unfair prejudicial evidence before the court. With this in mind, I make the following rulings:

> The alleged victim, [T], will not be cross-examined on any specific instances of past sexual behavior as the evidence is inadmissible under Military Rule of Evidence 412. Now that said, and in the interest of fairness to all parties, I will allow the defense to raise the following issues with the alleged victim:

> First, generally, had she had sex before the alleged misconduct in the charges? If yes, since what period of time and how often?

> Secondly, does she know what oral sex is? And, if yes, had she engaged in oral sex before the alleged misconduct and how often?

> \*　　\*　　\*　　\*　　\*　　\*

> And finally, was she having an affair with [GN]? And if yes, what if anything did the accused do to break it up and her reactions to this?

Also of import in this trial, the military judge rendered the following ruling on a different matter:

> As for the Government's motion in limine concerning the offer by the defense of good military character through the ac-

cused's officer effectiveness reports, the court finds that the charges as brought before this court do not in any way bring into question the accused's military character; that therefore evidence of good military character would not be pertinent to a violation of Article 125 of the Uniform Code of Military Justice or Article 134, the general offense Article under the Uniform Code of Military Justice. The case law requires that for good military character to be brought before a court, it must be a pertinent trait and pertinent to the offenses. The offense of sodomy under Article 125 which allegedly occurred in the accused's own home is totally removed from his duties as an officer of the United States Air Force and therefore good military character would not be pertinent to that. That said, also the offenses alleged under Charge II and its two specifications, again, occurred separate from his military duties and that the character trait, good military character, would not be pertinent to these offenses either. The argument that because one of the elements of the offense under Article 134, that the offenses require an element of conduct to the prejudice of good order and discipline in the military or were of a nature to bring discredit upon the military, do not within themselves, deal with the accused's military duties and therefore does not call into question or make a pertinent fact, his good military character. Therefore, I am going to grant the Government's motion in limine concerning the presentation of the OERs as evidence of good military character and it will not be allowed as such on the merits by the defense.

Finally, we note that the military judge permitted GN to testify, *inter alia*, that T told him that "that bastard molested me" as an explanation for her leaving Hawaii.

Defense counsel objected on the basis of hearsay and asserted that, since it was made after the motive to fabricate existed, it would not qualify as a prior consistent statement under Mil. R. Evid. 801(d)(1)(B). The military judge overruled the objection and found the statement to be a prior consistent statement. Nonetheless, before permitting the members to hear this testimony, the military judge gave the following *sua sponte* instruction:

> Members of the Court, Mr. [GN] is going to testify in rebuttal. The purpose for his rebuttal testimony is limited. His testimony and the answers to the questions from the Government is for the limited purpose to rebut an inference, either implied or express, raised by the defense during their case that [T] fabricated her statement which she eventually gave to the Office of Special Investigations after reading the statements of the accused and her mother, Paulette Hurst. These should be considered for this purpose and these purposes only.

## I

Mil. R. Evid. 412 "is intended to shield victims of sexual assaults from the often embarrassing and degrading cross-examination and evidence presentations common to prosecutions of such offenses." Drafter's Analysis, Manual, *supra* at A22–34 (Change 2). Yet, we have long recognized that this rule of evidence does not constitute an absolute bar to questioning a purported victim regarding prior sexual experiences. *See United States v. Colon–Angueira*, 16 MJ 20 (CMA 1983); *United States v. Elvine*, 16 MJ 14 (CMA 1983); *United States v. Dorsey*, 16 MJ 1 (CMA 1983). Moreover, the rule itself provides a standard to determine admissibility of such evidence. *See* Mil. R. Evid. 412(c)(3) [1]; *see*

---

1. Mil. R. Evid. 412(c) states:

(c)(1) If the person accused of committing a nonconsensual sexual offense intends to offer under subdivision (b) evidence of specific instances of the alleged victim's past sexual behavior, the accused shall serve notice thereof on the military judge and the trial counsel.

(2) The notice described in paragraph (1) shall be accompanied by an offer of proof. If the military judge determines that the offer of proof contains evidence described in subdivision (b), the military judge shall conduct a hearing, which may be closed, to determine if such evidence is admissible. At such hearings

*generally Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).

■ In the case at bar, we first note that the military judge did not totally preclude appellant from questioning the victim about her relationship with GN. Defense counsel was allowed to ask the victim whether this relationship caused her to fabricate a charge against appellant. Admittedly, the defense was denied the opportunity to ask T about the details of specific acts of sexual intercourse with GN. Nonetheless, the members were well aware of T's sexual relationship with GN, particularly that they had engaged in sexual intercourse on numerous occasions.

■ Appellant was also prohibited from questioning the victim about her sexual encounters with her adopted brother, her half-brother, and RT. After a proper hearing, the military judge found the incidents with her brothers were outside the scope of the original proffer of proof and too remote in time to have relevance in this case. He also found the one-time incident with RT was closer in time but was otherwise factually unrelated to the present case. We find no clear abuse of discretion in these rulings. *Cf. United States v. Welch,* 25 MJ 23, 26–27 (CMA 1987). *See* Mil. R. Evid. 412(c).[2]

■ Finally, we note that appellant was permitted to question T about her intimate sexual practices without regard to the identity of her partner, if these acts were shown to be relevant to an issue in question. For example, the military judge permitted questioning as to T's experience with oral sex. Such questions were relevant to the defense to show T had a detailed knowledge and description of this sexual act before her purported encounter with appellant. The ruling by the military judge merely prevented unwarranted questions about specific acts not at issue in this case. *See generally United States v. Saipaia,* 24 MJ 172 (CMA 1987), *cert. denied,* 484 U.S. 1004, 108 S.Ct. 694, 98 L.Ed.2d 647 (1988).

In light of these circumstances, we agree with the conclusion of the court below that the judge's ruling was "measured and fair." Unpub. op. at 2. Relevant questioning was permitted, while inflammatory, demeaning, and irrelevant[3] questions were excluded. We hold that there was no error in the military judge's ruling on these matters.

## II

■ The court below additionally held that the military judge erred when he failed to allow appellant to present his Officer Effectiveness Reports to the members on the merits of the issue of his guilt or innocence. Unpub. op. at 2–4. We agree.

---

the parties may call witnesses, including the alleged victim, and offer relevant evidence. In a case before a court-martial composed of a military judge and members, the military judge shall conduct such hearings outside the presence of the members pursuant to Article 39(a).

(3) If the military judge determines on the basis of the hearing described in paragraph (2) that the evidence which the accused seeks to offer is relevant and that the probative value of such evidence outweighs the danger of unfair prejudice, such evidence shall be admissible in the trial to the extent an order made by the military judge specifies evidence which may be offered and areas with respect to which the alleged victim may be examined or cross-examined.

2. We note that defense counsel wanted to question the victim about a surprise sexual attack on her person by appellant's son, JH, while she was sleeping in her bed in the early 1980s. He asserted that the victim's complaint concerning this incident was false, yet it nonetheless produced her stepbrother's expulsion from the home. He further asserted that her knowledge of the effects of false complaints of molestation was relevant to show her motive for falsely accusing appellant of the same kind of misconduct in this case. *See* Mil. R. Evid. 608(c). However, no evidence was offered or admitted which showed this prior complaint by the victim was false, so appellant's theory of admissibility failed on its own accord. *See* Mil. R. Evid. 104(b). Other theories of admissibility for this evidence were not properly developed at trial or pursued on appeal. *See* Mil. R. Evid. 105. *See generally* 1A Wigmore, *Evidence* § 87 (Tillers rev.1983).

3. We also note that no expert evidence of rape-trauma syndrome was presented in this case.

The location of the offenses on base, their abusive and degrading nature and their deleterious impact on the military family clearly call into question appellant's character as a military officer. *United States v. Wilson,* 28 MJ at 49 n.1; *United States v. Court,* 24 MJ 11 (CMA 1987). Pursuant to *United States v. Weeks,* 20 MJ at 25, however, we must test such an error for prejudice. Applying the considerations articulated therein, we find such error was harmless even beyond a reasonable doubt. *See United States v. Vandelinder,* 20 MJ 41, 47 (CMA 1985).

First, the Government presented a strong case on the sodomy specification. Evidence of appellant's statement to the Office of Special Investigations was corroborated by evidence of his statements to his wife. More importantly, the alleged victim also testified that the sodomies occurred, albeit under different circumstances and in her bedroom. The only disputed issue was intent.

Second, appellant's defense which focused on his lack of intent alone was especially feeble. He contended that T had perpetrated these sexual advances on him without his knowledge. The possibility of surprise sexual assaults on a father by his stepdaughter on two separate occasions without immediate notification to the wife, however, is not particularly strong. *See United States v. Wilson,* 20 MJ 31, 32 (CMA 1985).

Third, the probative value of the proferred military character evidence was also not particularly great. *See United States v. Wilson,* 28 MJ at 51. Admittedly, appellant's 13–year record of exemplary service would have provided "the basis for an inference that" he "was too professional a soldier to have committed offenses which would have adverse military consequences." *Id.* at 49 n.1. However, the persuasiveness of this inference is somewhat speculative because the reports fail to directly address his sexual morality or his performance as a father.

Fourth, and most importantly, appellant was allowed to introduce other proof of his professional service and military character. He presented the testimony of two senior officers, Lieutenant Colonel Gregory Hall, U.S.A.F., and Colonel Carlton Roberson, U.S. Army. They both testified as to their high regard for appellant, and they commented on their recent daily observations of his exemplary behavior and bearing. Accordingly, the rejected evidence was partially substituted for in this case. *See also United States v. Klein,* 20 MJ 26, 28 n.2 (CMA), *cert. denied,* 474 U.S. 1009, 106 S.Ct. 534, 88 L.Ed.2d 465 (1985).

## III

■ Appellant's final claim of error centers on admission of rebuttal testimony by the government witness, GN. He testified that on September 22, 1986, the victim told him that her father had "molested" her. Defense counsel asserted that such testimony was hearsay under Mil. R. Evid. 801(c) and 802; and that it did not otherwise qualify for admission as a prior consistent statement under Mil. R. Evid. 801(d)(1)(B).[4] Counsel noted that this out-of-court statement was not made when the victim "had no reason to fabricate whatsoever," and it was made "after she made that allegation in the hospital...."[5] The military judge overruled this objection.

In *United States v. Meyers,* 18 MJ 347 (CMA 1984), this Court noted that the

---

**4.** Mil. R. Evid. 801(d)(1) states what is not a hearsay statement:

> *Prior statement by witness.* The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition, or (B) *consistent with the declar-*

*ant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive,* or (C) one of identification of a person made after perceiving the person [.]
(Emphasis added.)

**5.** T's allegation of sexual abuse first surfaced when she was taken to the hospital on September 19, 1986.

predecessor of Mil. R. Evid. 801(d)(1)(B), found in paragraph 153a, Manual for Courts–Martial, United States, 1969 (Revised edition), expressly required a prior consistent statement to be "made ... before there was a motive to misrepresent." Nevertheless, the Court declined to specifically decide whether Mil. R. Evid. 801(d)(1)(B) had the same requirement by implication. *Id.* at 351 and n.2. Earlier, in *United States v. Sandoval,* 18 MJ 55, 62–63 (CMA 1984), this Court stated in dicta that Mil. R. Evid. 801(d)(1)(B) did not have such a requirement. Later, however, in *United States v. Jones,* 26 MJ 197, 199–200 (CMA 1988), this Court broadly suggested that the prior-motive-rule approach to Mil. R. Evid. 801(d)(1)(B) applies although such a holding went well beyond the facts of that case.

A similar problem exists in federal civilian courts. Several federal circuits have construed the federal-rule-of-evidence counterpart of Mil. R. Evid. 801(d)(1)(B) to impliedly contain this prior-motive requirement. *See United States v. Vest,* 842 F.2d 1319, 1330 (1st Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 489, 102 L.Ed.2d 526 (1988); *United States v. Monzon,* 869 F.2d 338, 343 (7th Cir.1989); *United States v. Bowman,* 798 F.2d 333, 338 (8th Cir.1986), *cert. denied,* 479 U.S. 1043, 107 S.Ct. 906, 93 L.Ed.2d 856 (1987); and *United States v. Miller,* 874 F.2d 1255, 1271 (9th Cir.1989). *See generally* Note, *Prior Consistent Statements: Temporal Admissibility Standard Under Federal Rule of Evidence 801(d)(1)(B),* 55 Fordham L. Rev. 759, 760 n.6 (1987). Several other federal circuits have interpreted this form of the rule as not containing such a requirement. Instead, they hold that the time the motive to fabricate arose would be treated only as a matter affecting the weight of such evidence rather than its admissibility. *See United States v. Parodi,* 703 F.2d 768, 784–87 (4th Cir.1983); *United States v. Parry,* 649 F.2d 292, 296 (5th Cir. Unit B 1981); *United States v. Hamilton,* 689 F.2d 1262, 1273–74 (6th Cir.1982), *cert. denied,* 459 U.S. 1117, 103 S.Ct. 753, 754, 74 L.Ed.2d 971 (1983); and *United States v.*

*Anderson,* 782 F.2d 908, 915–16 (11th Cir. 1986). *See generally* Note, *Prior Consistent Statements and Motives to Lie,* 62 N.Y.U.L. Rev. 787, 798–803 (1987).

A hybrid view has also developed. It holds that a prior consistent statement made after a motive to fabricate exists may be admissible. However, such a statement may only be introduced for rehabilitative purposes and not for the substantive truth of the matter asserted. *See United States v. Brennan,* 798 F.2d 581, 587–88 (2d Cir. 1986), *cert. denied,* —— U.S. ——, 109 S.Ct. 1750, 104 L.Ed.2d 187 (1989); *United States v. Harris,* 761 F.2d 394, 399–400 (7th Cir.1985); *United States v. Roy,* 843 F.2d 305, 307 (8th Cir.), *cert. denied,* 487 U.S. 1222, 108 S.Ct. 2881, 101 L.Ed.2d 916 (1988).

In the present case we need not determine the full contour of this rule for trials by courts-martial. Here, the Government initially proffered the challenged testimony of GN as rebuttal to the specific suggestion by the defense that the victim's pretrial statement to military investigators in November 1986 was unduly influenced. The asserted influences were the pretrial statements given to the military investigators by her mother and appellant, which were purportedly shown to her shortly before she made her own statement to these officials. The challenged rebuttal in this case, however, evidenced the victim's statements made on September 22, 1986, a date which clearly preceded the date of the purported tainting. *See United States v. Jones, supra.* Furthermore, the military judge resisted a belated attempt by the prosecution to expand the purpose of this rebuttal to respond to all motives to fabricate which were averred in the case, and he so instructed the members of the limited purpose of this rebuttal evidence. Accordingly, we find no error occurred under any of the above-noted constructions of this rule.

The decision of the United States Air Force Court of Military Review is affirmed.

Chief Judge EVERETT and Judge COX concur.