UNITED STATES

v.

**Airman Basic Robert D. WHITAKER, Jr., FR249–19–6859 United States Air Force.**

**ACM 28299.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 7 Nov. 1989.

Decided 28 Feb. 1992.

**824**

Appellate Counsel for the Appellant: Colonel Richard F. O'Hair, Lieutenant Colonel Thomas O. Maser, and Major George P. Clark.

Appellate Counsel for the United States: Colonel Robert E. Giovagnoni, Lieutenant Colonel Brenda J. Hollis, and Captain Thomas E. Wand.

Before O'BRIEN, PRATT, JAMES and O'HAIR, Appellate Military Judges.

## OPINION OF THE COURT

PRATT, Senior Judge:

Consistent with his pleas, appellant was convicted at a general court-martial, before military judge alone, of two specifications of forcible sodomy. Pursuant to a pretrial agreement, the approved sentence includes a dishonorable discharge, confinement for 3 years, total forfeitures, and reduction to E–1.[1]

On appeal, appellant asserts that the military judge erred by disallowing cross-examination concerning post-offense sexual activities of the victim during the sentencing portion of the trial. Under the circumstances of this case, we agree but find the error harmless.

The victim of both charged offenses, WL, was 18 years old when she met and began dating appellant in March 1988. In July 1988, after a date, appellant took WL to his dormitory room on Tinker Air Force Base. When she attempted to leave and resisted appellant's advances, appellant threw her down on a bed, forcibly removed part of her clothing, and forced her to perform oral sodomy on him. Afterward, he apologized and promised it would never happen again.

Several weeks later, WL agreed to accompany appellant on a trip to his parent's house in Texas. Late one night, while appellant was sleeping on a bed in the living room, WL passed through the living room on her way to get a glass of water. Appellant beckoned her to his bed and asked her to sleep with him there. WL agreed to talk for awhile, but declined to sleep there. When she tried to return to her room, appellant grabbed her wrist and refused to let her go. After further discussion, appellant became angry and pushed WL down onto the bed, forcing her face into a pillow. Despite her attempts to escape, appellant held her in that position and proceeded to anally sodomize her.

During the sentencing portion of the trial, the prosecution introduced a General Court–Martial Order reflecting appellant's prior conviction in February 1989 for offenses against another woman in February 1988 (a month before he first met WL). In that case, a contested trial, appellant was convicted of kidnapping, oral sodomy by force, and attempted anal sodomy by force, all on the same date and with the same victim. He was sentenced to a dishonorable discharge, confinement for 7 years, total forfeitures and reduction to E–1.

The prosecution also called WL to testify about the impact of appellant's offenses upon her. The following colloquy ensued:

WIT: It's been hard. I've had a hard time getting along with my family. I've had some real emotional problems. Some days are good. Some days are bad. I have real bad dreams. I can't eat sometimes. I get really nervous when I go out with guys by myself. I

---

1. The adjudged sentence differed only in that 4 years of confinement were adjudged.

get real nervous by myself. I always ask my best friend to go with me.

TC: How often do you think about these offenses and what happened to you?

WIT: All the time.

TC: Have you had to seek professional help as a result of this?

WIT: Yes, I've had to seek professional help once a week ever since March. I am still getting help.

TC: [WL], what caused you to bring these offenses to light, to report them?

WIT: I couldn't handle it on my own any more. I guess you'd call it a breakdown. I was pretty upset because I couldn't believe it happened to me and that I let it.

TC: Why did you wait so long?

WIT: I was afraid of him. I was—I thought that I could change him because I knew there was a part of him in there that I fell in love with and I kept hoping that part would come back and it never did. It just kept getting worse and I just kept getting deeper and deeper in and I didn't know how to get out. I was too afraid.

On cross-examination, the defense counsel sought to counter this "impact" testimony by establishing, through the witness, facts about the relationship after the charged incidents which would tend to indicate a lack of adverse impact. Specifically, defense counsel elicited testimony that, after the incident at the home of the accused's parents in Texas, WL stayed there for several more days; that the relationship with appellant continued unabated after that incident; that WL continued to date the appellant until he was confined in February 1989 as a result of his first trial; that she believed she was in love with him during that period and had told him so; that the relationship actually became more serious, with talk of marriage and plans for children; that appellant let her pick out an engagement ring, bought it for her, eventually asked her to marry him, and she accepted; that they set a wedding date and made extensive plans for the wedding; that she attended his first trial and "stuck with him" through it.

Finally, defense counsel sought to establish, through this same line of cross-examination, that WL had "slept with" appellant on the night of 4 February 1989 (the first day of his prior trial). Trial counsel objected, citing defense counsel's failure to comply with the notice requirement of Mil. R.Evid. 412(c). Defense counsel argued that the notice requirement did not apply to a situation where, as here, the matter was being raised on cross-examination. After brief argument, the military judge, citing counsel's failure to provide notice, sustained the objection and thereby denied defense counsel the opportunity to pursue that line of questioning.

## I. APPLICATION OF THE RULE

 Although more frequently applied during the findings portion of trials, Mil. R.Evid. 412 has equal vitality during sentencing proceedings. As the Court of Military Appeals has noted:

... limiting application of Mil.R.Evid. 412 to findings would defeat its purpose—to protect victims of nonconsensual sexual offenses against needless embarrassment and unwarranted invasions of privacy.

*United States v. Fox*, 24 M.J. 110 (C.M.A. 1987); *see United States v. Vega*, 27 M.J. 744 (A.C.M.R.1988); *United States v. Oxford*, 23 M.J. 548 (A.C.M.R.1986). Similarly, although typically applied to evidence of a victim's sexual conduct *prior* to the charged offense, there is no reason to preclude application of the Rule to situations, as in this case, in which the victim's *post-offense* sexual behavior is argued to be relevant to a matter in issue. *See United States v. Elvine*, 16 M.J. 14 (C.M.A.1983).

In the case before us, there was no question at trial of the Rule's application; indeed, the defense counsel was precluded from introducing the evidence at issue because the military judge *did* apply the Rule—the notice requirement thereof. Mil. R.Evid. 412(c)(1) provides:

If the person accused of committing a nonconsensual sexual offense intends to offer ... evidence of specific instances of the alleged victim's past sexual behavior,

the accused *shall serve notice thereof on the military judge and the trial counsel.* (Emphasis added.)

The military judge held that, because the accused had failed to provide the required notice, he would be precluded from seeking to introduce the information. The issue appellant raises, then, is whether the military judge erred in this ruling. We conclude that he did.

## II. THE NOTICE REQUIREMENT

■ Appellant's initial argument is that the notice provision of Mil.R.Evid. 412 does not apply to testimony being elicited on cross-examination. After all, he argues, the defense could not be expected to give notice about the scope of cross-examination before the witness has even taken the stand and given direct testimony. Under the facts of this case, we reject this argument.

Although such an argument might conceivably prevail on grounds of fundamental fairness in a situation where the triggering testimony was not reasonably foreseeable, such is certainly not the case here. Where, as here, the evidence involved prior sexual relations between the accused and the victim, and the witness to be cross-examined is the victim herself, the defense can hardly claim surprise or otherwise reasonably argue that they could not anticipate the desire to elicit the disputed testimony. Nor does the Rule, in the course of providing several carefully crafted exceptions, mention any intent to exempt evidence adduced through cross-examination. *See* Mil. R.Evid. 412(b).

■ A more troublesome issue arises from the fact that Mil.R.Evid. 412, notably unlike its federal counterpart, does *not* provide a minimum time period for its notice requirement. Fed.R.Evid. 412 requires that notice be given, in writing, at least 15 days before trial, *except* the court may allow notice at a later time, *including during trial,* if the evidence is newly discovered or the issue to which it relates is newly arisen. The drafters of our Rule acknowledge that "[t]he requirement [in the Federal Rule] that notice be given not later than fifteen days before trial has been deleted as being impracticable in view of the necessity for speedy disposition of military cases." It has been "substantially modified from the Federal Rule in order to adapt it to military practice." MCM, 1984, App. 22, Analysis of the Military Rules of Evidence, Mil.R.Evid. 412.

Whatever the rationale of the drafters, the fact remains that the time period connected with the notice requirement was not just modified; it was removed altogether. *In the absence of any specified time period, how can notice ever be said to be untimely?* By removing the minimum time for notice, the drafters have arguably removed the requirement entirely. If, for instance, instead of simply asking the question, trial defense counsel had announced, "Your Honor, at this time, in accordance with Rule 412(c), I give notice that I wish to question this witness concerning specific instances of her past sexual behavior," there would be little basis to find that notice untimely under the present language of Mil.R.Evid. 412(c). *See United States v. Hurst,* 29 M.J. 477, 478 (C.M.A.1990) (notice apparently given at trial). Instead, the defense counsel asked the question, to which the trial counsel objected. In this bench trial,[2] the distinction between timely notice and no notice hinges, in essence, on the format of an utterance.

In reality, absent some specified minimum notice period, this so-called "notice" actually serves only to "flag" the issue and channel it into the protective procedure set out in Mil.R.Evid. 412(c)(2) and (3) for determining admissibility, i.e., offer of proof, hearing as appropriate, and ruling on extent of admissibility. As a practical matter, this "flagging" was just as effectively accomplished by trial counsel's objection as it would have been by defense counsel's

---

**2.** In a trial with court members, of course, it would be important to raise this issue outside the hearing of the court members so as to give full effect to the purpose underlying the Rule, i.e., to allow for a determination of whether, and to what extent, evidence of past sexual behavior of the witness will be allowed to come before the members.

last second "notice".[3] The fact remains, however, that defense counsel failed to give "notice" as called for by the Rule. Although, based on the discussion above, we question whether this technical lapse merits enforcement, we will assume *arguendo* that it does and proceed to evaluate the appropriateness of the sanction imposed for counsel's failure to comply.

## III. THE PRECLUSION SANCTION

Just as the Rule fails to specify a minimum notice period, it is also silent as to sanctions for "inadequate" notice. Ordinarily, if sanctions are authorized, we would expect to see specific provisions defining the sanctions and their proper application. *See, e.g.*, R.C.M. 701(g)(3), 905(e), 1004(b)(1), Mil.R.Evid. 304(d), 311(d), 321(c), and 505(h). Again, assuming *arguendo* that the preclusion of evidence was an inherently available remedy, we must address whether it was an appropriate remedy in this case.

The recent case of *Michigan v. Lucas*, — U.S. ——, 111 S.Ct. 1743, 114 L.Ed.2d 205 (1991), is instructive. That case involved failure to comply with a statutory notice requirement under a "rape shield" statute similar to our Rule 412. The Michigan Court of Appeals had adopted a per se rule that preclusion of evidence of prior sexual behavior is unconstitutional in all cases where the victim had a prior sexual relationship with the defendant. The Supreme Court reversed, stating:

> The Sixth Amendment is not so rigid. The notice-and-hearing requirement serves legitimate state interests in protecting against surprise, harassment, and undue delay. Failure to comply with this requirement may in some cases justify even the severe sanction of preclusion.

111 S.Ct. at 1748. However, in the course of refusing to agree that the preclusion sanction could *never* be justified, the Court acknowledged that this sanction was indeed severe and not necessarily appropriate in every instance where notice is lacking. Analogizing to their treatment of the use of the preclusion sanction in cases involving failure to comply with discovery rules, the Court discussed their holding in *Taylor v. Illinois*, 484 U.S. 400, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988), wherein they rejected a similar claim that "preclusion is *never* a permissible sanction for a discovery violation." *Id.* at 414, 108 S.Ct. at 655 (emphasis in original). In her lead opinion, Justice O'Connor explained:

> We did not hold in *Taylor* that preclusion is permissible every time a discovery rule is violated. Rather, we acknowledged that alternative sanctions would be "adequate and appropriate in most cases." *Id.* at 413 [108 S.Ct. at 655]. We stated explicitly, however that there could be circumstances in which preclusion was justified because a less severe penalty "would perpetuate rather than limit the prejudice to the State and the harm to the adversary process. *Ibid. Taylor*, we concluded, was such a case. The trial court found that Taylor's discovery violation amounted to "willful misconduct" and was designed to obtain "a tactical advantage." *Id.* at 417 [108 S.Ct. at 656]. Based on these findings, we determined that, "[r]egardless of whether prejudice to the prosecution could have been avoided" by a lesser penalty, "the severest sanction [wa]s appropriate." *Ibid.*

*Lucas*, 111 S.Ct. at 1748. There is no accusation, or any other indication in the present case, that the trial defense counsel willfully disregarded the notice require-

---

**3.** To be sure, a certain degree of advance notice to the military judge and to trial counsel serves to enhance the timely disposition of such matters. Ideally, adequate notice enables both parties and the military judge to be prepared to litigate the issue with a minimum of delay—calling witnesses (as desired), making arguments, citing applicable case law, and delivering an appropriate ruling consistent with the policy underlying the Rule. Thus, advance notice is to be encouraged as it assists in avoiding surprise, harassment, and needless delay in the trial process. Indeed, it may well be that the needs of the military justice system, like those of its federal and state counterparts, warrant changing the Rule to include both a minimum notice period and attendant sanctions for failure to comply. We must, however, address the Rule as written.

ment; indeed, it appears from the record that defense counsel had concluded, however mistakenly, that the provisions of Rule 412 did not apply to cross-examination. Nor is it alleged, or does it appear, that counsel sought to achieve surprise or to otherwise gain a tactical advantage; the prior sexual conduct in issue here was fully disclosed during cross-examination of the victim in her testimony during the Article 32 investigation.

■ In *United States v. Brown*, 17 M.J. 544 (A.C.M.R.1983), the only military case we have found dealing directly with this issue of notice under Mil.R.Evid. 412, the Army Court of Military Review, in a case apparently devoid of bad faith, provided a pragmatic analysis of the problem:

> We find that the offered evidence ... was of obvious critical importance to the defense, and that the military judge had no choice but to conduct a hearing, or order a continuance. Either of these alternatives would have been preferable to the summary exclusion of the evidence. (citations omitted) The defense counsel's negligence, lack of experience, inadequacy or whatever reason for noncompliance with MRE 412(c) simply cannot justify

exclusion of such critical evidence to the detriment of an accused.

17 M.J. at 547.[4] We share the concern that the extreme sanction of exclusion not be lightly invoked. In the present case, there was no apparent consideration of lesser sanctions and there was no showing by the prosecution that the "late" notice impaired their ability to participate effectively in the hearing called for under Mil.R.Evid. 412(c)(2). In short, there was no apparent reason, particularly in this judge-alone case, why the military judge could not have applied a lesser sanction (e.g., a continuance) for the inadequate notice, if such relief were necessary either for the prosecution or the court or otherwise. Any lesser sanction, short of preclusion, would have then enabled the judge to invoke the scheme created by the Rule, balancing the interests of the accused in offering relevant evidence against the public policy interest of protecting the victim from undue embarrassment or invasion of privacy. *See United States v. Hollimon*, 12 M.J. 791 (A.C.M.R.1982). Absent some indication of bad faith, or that lesser sanctions are inadequate for some reason, the preclusion sanction will not normally be warranted.[5] It was not appropriate to impose it here.

**4.** The Army court continued in *Brown* to observe:

> Aside from any constitutional requirement of admissibility, the reason for this is obvious. To exclude such evidence under such circumstances immediately raises the issue of the defense counsel's adequacy and the accused's right to effective assistance of counsel. Thus whether an appellate court reverses a conviction because of the exclusion of critical evidence or because of inadequate representation by counsel is of little matter. The administration of justice is not well served in either instance.

17 M.J. at 547. For our part, we do not equate lack of notice with ineffective assistance of counsel, per se. Our approach to the preclusion sanction will reduce the potential for ineffective assistance issues to arise inasmuch as we believe that this sanction has very limited application. In most situations, then, lesser sanctions would be appropriate and would not preclude the military judge's examination of the offered evidence under the procedure set out in Rule 412(c)(2) and (3). In those rare instances of bad faith or misconduct by a defense counsel, where preclusion might be appropriate, ineffective assistance may indeed be in issue; but we need not decide that issue today.

**5.** *See United States v. Townsend*, 23 M.J. 848 (A.F.C.M.R.1987) (exclusion of alibi evidence based on failure to provide prior notice under R.C.M. 701(b)(1) is "a drastic remedy to be employed only after various factors have been carefully evaluated.") The Joint Service Committee on Military Justice has proposed that the Discussion to R.C.M. 701(g)(3) be amended by adding the following language after the first paragraph:

> The sanction of excluding the testimony of a defense witness should be used only upon finding that the defense counsel's failure to comply with this rule was willful and motivated by a desire to obtain a tactical advantage or to conceal a plan to present fabricated testimony. Moreover, the sanction of excluding testimony of a defense witness should only be used if alternative sanctions could not have minimized the prejudice to the government. Before imposing this sanction, the military judge must weigh the defendant's right to compulsory process against the countervailing public interests, including (1) the integrity of the adversary process, (2) the interest in the fair and efficient administration of military justice, and (3) the potential prejudice to the truth-determining function of the trial process.

## IV. "CONSTITUTIONALLY REQUIRED" UNDER RULE 412(b)(1)

 The right to cross-examination is one of the primary interests secured by the Confrontation Clause. *Douglas v. Alabama*, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965). It is an important right, "critical for ensuring the integrity of the factfinding process." *Kentucky v. Stincer*, 482 U.S. 730, 736, 107 S.Ct. 2658, 2662, 96 L.Ed.2d 631 (1987). An accused's right to cross-examine witnesses against him, to test the truth of their testimony, is certainly not absolute, but must not be lightly denied. The Tenth Circuit Court of Appeals, in *United States v. Begay*, 937 F.2d 515, 523 (10th Cir.1991), addressed the issue of what qualifies as "constitutionally required" evidence under Rule 412(b)(1), quoting with approval from *United States v. Saunders*, 736 F.Supp. 698, 703 (E.D.Va. 1990):

> ... Although the Rule provides no guidance as to the meaning of the phrase "constitutionally required," it seems clear that the Constitution requires that a criminal defendant be given the opportunity to present evidence that is relevant, material and favorable to his defense. (citations omitted)

*See United States v. Valenzuela–Bernal*, 458 U.S. 858, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982); *United States v. Jensen*, 25 M.J. 284, 286 (C.M.A.1987) ("Relevance is the key to determining when the evidence is 'constitutionally required to be admitted'."); *United States v. Dorsey*, 16 M.J. 1 (C.M.A.1983). Although this reference is made in the context of a "defense" on the merits, we see no reason for a different conclusion where, in the bifurcated proceedings of courts-martial, the evidence is "relevant, material and favorable" to an accused's sentencing case.[6] *United States v. Elvine, supra; United States v. Oxford,* 23 M.J. at 552 ("To the extent that the government is allowed to present evidence in aggravation of sex related offenses, we believe an accused has the constitutional right to present matters in extenuation of his transgression, even though that evidence includes the past sexual behavior of the victim."). While not every instance of cross-examination will involve evidence whose admission is "constitutionally required," we do not hesitate to find that such is the case here.

## V. CONCLUSIONS

Thus, whether on the basis of the lack of a minimum time period in the Rule or on the ground that the preclusion sanction was unwarranted, we conclude that the military judge abused his discretion when he declined, on the grounds of lack of notice, to weigh the admissibility of the evidence proffered by the defense in accordance with the scheme set out in Mil.R.Evid. 412. We further conclude, having performed the balancing test called for by the Rule, that the evidence which defense counsel sought to elicit on cross-examination of the victim should have been admitted as "constitutionally required" to protect appellant's rights under the Confrontation Clause of the Sixth Amendment. Mil.R.Evid. 412(b)(1).

 Having determined that the military judge committed error affecting appellant's Sixth Amendment confrontation rights, we must address what relief is appropriate. Such error does not require reversal in every instance:

> Error of a constitutional nature does not require reversal unless an appellate court determines that a reasonable likelihood existed that the excluded evidence could have affected the judgment of the trier of fact.

*United States v. Colon–Angueira*, 16 M.J. 20 (C.M.A.1983). If we determine beyond a reasonable doubt that the error was harm-

---

Although this proposal has not yet been approved, this language presents a compelling parallel to our view of the proper application of the preclusion sanction under Mil.R.Evid. 412.

6. By way of analogy to discovery issues, the Supreme Court has readily held that the suppression of evidence favorable to the accused by the prosecution violates due process where the evidence is material *either to guilt or punishment. Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *Moore v. Illinois,* 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972).

less, no relief is warranted. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *United States v. Mobley*, 34 M.J. 527 (A.F.C.M.R.1991). In making this determination, we must consider the totality of the evidence in the case; that is, the context in which the unwarranted preclusion occurred. *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).

■■■ The question which the defense counsel sought to ask (i.e., whether the victim had "slept with" the accused on the night of the first day of his prior trial) was designed to counter the victim's direct testimony concerning the extent of the trauma she suffered at the hands of the accused. As described earlier, this question culminated a series of questions and answers which effectively achieved defense counsel's goal of balancing the impression given by the witness in her direct testimony. While the answer to this last question would have been a nice "finishing touch", the defense counsel's point had already been made quite thoroughly. We do not hesitate, then, to find beyond a reasonable doubt that the error in excluding this evidence did not prejudice the accused; it was harmless.

The approved findings and sentence are correct in law and fact and no error materially prejudicial to the substantial rights of the accused was committed. Accordingly, the findings and sentence are

AFFIRMED.[7]

Chief Judge O'BRIEN concurs.

Senior Judge O'HAIR did not participate.

Judge JAMES (concurring in the result):

I concur in the result. I write separately to disassociate myself from the majority's treatment of "notice," from its finding that the trial judge abused his discretion, and from its too-quick conclusion that the issue in this case had a constitutional aspect.

The majority views "serve notice" as meaningless in Mil.R.Evid. 412(c)(1) because there is no period specified by the rule by which the notice must precede the inquiry. Taken in context, the notice provision obviously means something, not nothing. The requirements that notice be "served" and that it "shall be accompanied by an offer of proof," *id.*, imply some formality to the notice required. Thus, the majority is correct in its view that *any* advance notice would be sufficient under Mil.R.Evid. 412, but that does not excuse omission of notice. The majority confounds this issue by mistaking noncompliance with untimely compliance. The problem in this case was noncompliance, not late compliance.

The majority's interpretation and its disparagements ("this so-called notice serves only to 'flag' the issue," "this technical lapse") show its dissatisfaction with the rule, caused by the absence of a specified period by which the notice must precede the inquiry. I agree that the rule could be improved by specifying the period, just as in the examples cited by the majority. I don't agree that the absence of such detail detracts from the enforceability of the rule. "Notice" means more than plunging into the forbidden inquiry. Notice is required by the rule, and we should enforce the rule as it is written instead of diminishing it for its flaws.

Next, I would not so quickly find, with no precedent cited, that the standard for review of such a ruling is abuse of discretion,[8] and I would not so quickly rush to find that the discretion was abused. The rule generally excludes this kind of evi-

---

7. In response to a show cause order, the government has submitted an affidavit from the convening authority which satisfies us that the clemency matters submitted on behalf of the appellant were properly considered prior to the convening authority's action in this case. *United States v. Craig*, 28 M.J. 321 (C.M.A.1989); *United States v. Youngren*, 28 M.J. 255 (C.M.A.1989) (summary disposition); *United States v. Blanch*, 29 M.J. 672 (A.F.C.M.R.1989).

8. It probably is, *Cf. United States v. Jenkins*, 27 M.J. 209, 211 (C.M.A.1988) (abuse of discretion governs review of ruling based on balancing of interests under Mil.R.Evid. 403), but some curtsey to judicial craftsmanship would help more than the majority's intrepid legislation at this interstice.

dence, and it creates an exception for admissibility that is conditioned in part upon compliance with the notice provision. Mil. R.Evid. 412(b). There was no "notice ... accompanied by an offer of proof" served in this case. That constitutes noncompliance with the rule, and noncompliance prevents the exception in favor of admission from operating. This is exactly the logic that the military judge followed. Only our recent discovery of the requirement to do more than "hipshoot" with the ultimate sanction, with which I agree, prevents the whole issue from dying right there. I would not hold that a military judge abuses discretion by following the rule precisely while failing to read the future mind of an appellate judge. *Cf. United States v. Toro*, 34 M.J. 506, 516 (A.F.C.M.R.1991), (whether to find abuse upon retroactive application of *United States v. McCaskey*, 30 M.J. 188 (C.M.A.1990). Instead, I would dispose of the case upon the absence of prejudicial effect. Article 59(a), UCMJ, 10 U.S.C. § 859(a) (1988). That would lead me to the same result.

I also disagree with the majority view that the denial in this case is a constitutional issue. As best we can tell, *cf.* Mil. R.Evid. 103(a), (b), the defense counsel had only one more question to ask after 15 pages of cross-examination, one more question that the majority paints as the last whirl to the icing on this cake. I cannot agree that the constitutional right to confrontation is denied when there has been ample public testimony in court, in the presence of the appellant and counsel, during which cross-examination was in almost every other respect permitted. Surely not every ruling that sustains an objection to a question is a constitutional matter. But it matters naught: Even when the majority and I apply the rigorous test for prejudice on constitutional issues, it is clear that there was none.