UNITED STATES, Appellee,

v.

Bryan D. PETERSEN, Staff Sergeant,
U.S. Air Force, Appellant.

No. 54,131.

ACM 24913.

U.S. Court of Military Appeals.

July 20, 1987.

For Appellant: *Major Charles E. Ambrose, Jr.* (argued); *Colonel Leo L. Sergi* (on brief).

For Appellee: *Major David F. Barton* (argued); *Colonel Kenneth R. Rengert* (on brief); *Colonel Joe R. Lamport* and *Lieutenant Colonel Robert E. Giovagnoni.*

*Opinion of the Court*

COX, Judge:

Contrary to his pleas, appellant was convicted of carnal knowledge and sodomy with his natural daughter on diverse occasions, in violation of Articles 120 and 125, Uniform Code of Military Justice, 10 U.S.C. §§ 920 and 925, respectively. He was sentenced by the court-martial members to dishonorable discharge, confinement for 8 years, and reduction to E–3. The findings and sentence were approved by the convening authority and affirmed by the Court of Military Review in an unpublished opinion. We granted review of the following issues:

I

WHETHER THE MILITARY JUDGE ERRED BY ALLOWING A PROSECUTION EXPERT WITNESS TO OFFER EXPERT TESTIMONY UPON THE CREDIBILITY OF THE VICTIM.

II

WHETHER THE MILITARY JUDGE ERRED BY REFUSING TO ALLOW

THE COURT MEMBERS TO CONDUCT FURTHER EXAMINATION OF THE VICTIM FOLLOWING HER TESTIMONY IN REBUTTAL.

The primary evidence against appellant was the testimony of his adolescent daughter. Appellant testified in his own defense and specifically denied his guilt. Essentially, the trial developed into a contest where the members either believed the victim, whose testimony was not free from contradiction, or appellant. For example, she testified that appellant had moles on the lower abdominal region of his body, but a doctor described the moles as being higher, around the navel, where they might have been visible if appellant were shirtless. Two sleeping bags were introduced into evidence, one containing evidence of spermatic fluid, alleged to be appellant's. Appellant countered with evidence that he had undergone a vasectomy and his sperm count was zero. Appellant introduced evidence to establish a motive for his daughter to have lied about him.

During an Article 39(a) * session, the Government called Ms. Ellen Burns, who identified herself as an independent clinical social worker licensed by the Board of Registration of Social Workers of the Commonwealth of Massachusetts, which, of "four levels of social work licensure ... is the highest." She stated that she was employed by the Massachusetts Society for the Prevention of Cruelty to Children (MSPCC). Through examination, her extensive training, experience, and expertise as a specialist in matters involving child abuse, sexual and otherwise—including adolescents—was elicited.

Individual defense counsel objected, however, to qualifying this witness "as an expert in the areas enumerated by the prosecution ... [citing] Military Rules of Evidence 702 and, ... her lack of education, training, and experience dealing with the limited areas ... called for ... in this case." The military judge overruled the objection and accepted the witness "as an expert ... [in] adolescent behavior and

child sexual abuse and any topic related directly or indirectly thereto." In due course, Ms. Burns was called before the members of the court-martial, where she repeated her qualifications.

█ The military judge instructed the court members "that ... [Ms. Burns] is qualified as an expert and will testify ... with reference to adolescent behavior and child sexual abuse." Ms. Burns' testimony included information about the various factors that could be observed in child victims of sexual abuse and noted that the behavior and statements of appellant's daughter were consistent with many of these factors. Trial counsel then questioned the witness as follows:

Q. Ms. Burns, in your expert opinion, do you find ... [the girl's] rendition of the events that have led to the charges which are before this court believable or not?

A. I find them believable.

Q. —And to what degree?

A. Greatly.

The Court of Military Review assumed error in the admission of this testimony. However, relying on *United States v. Cameron*, 21 M.J. 59 (C.M.A. 1985), and Mil.R.Evid. 704, Manual for Courts-Martial, United States (1984), the court held that the error was harmless. Unpub. op. at 2.

We, too, find that admission of the quoted testimony was error. We are skeptical about whether any witness could be qualified to opine as to the credibility of another. *But see United States v. Gipson*, 24 M.J. 246, 254 (C.M.A. 1987) (Everett, C.J., concurring). In any event, this witness, although an expert in the area of child sexual abuse and despite her knowledge, training, and experience, never demonstrated specialized knowledge in her capacity to determine if a child-sexual-abuse victim was telling the truth. Although she identified various factors which were recognized in such victims, she never connected any of those to the question

---

* Uniform Code of Military Justice, 10 U.S.C. § 839(a).

of credibility. Thus, while she may have been an expert witness in the general area of child sexual abuse within the meaning of Mil.R.Evid. 702, her expertise did not extend to the specific issue of the credibility of such victims. *United States v. Azure,* 801 F.2d 336 (8th Cir. 1986). *See United States v. Adkins,* 5 U.S.C.M.A. 492, 18 C.M.R. 116 (1955). *See also United States v. Wagner,* 20 M.J. 758 (A.F.C.M.R.), *pet. denied,* 20 M.J. 425 (1985), for a good discussion of this issue.

Additionally, we note that the quoted testimony did not concern the victim's ability or lack thereof to grasp and appreciate the truth as a result of some psychological or psychiatric impairment resulting from the alleged incidents. The witness here simply testified that she believed the victim's version of what occurred. We have, thus far, rejected this type of testimony as being without the ambit of Mil.R.Evid. 704 or 608; *United States v. Cameron, supra.* And we see no reason to accept this expert's opinion of the victim's credibility with regard to what did or did not happen.

Government counsel assert that such testimony was allowed in *United States v. Snipes,* 18 M.J. 172 (C.M.A. 1984). However, there we noted that trial defense counsel opened the door to such evidence by asking a witness a question pertaining to the believability of a victim. Here, trial defense counsel not only avoided such a question but sought to preclude such testimony during an Article 39(a) session. The credibility of a witness and the permissible evidence pertaining thereto is restricted by Mil.R.Evid. 608. *See United States v. Gipson, supra.* Expert testimony may be appropriate in some circumstances where a person's capacity or ability to grasp or comprehend the truth is in issue. Thus, we hold that the military judge erred by permitting the quoted testimony to stand.

■ Considering whether this error was materially prejudicial to appellant, Art. 59(a), UCMJ, 10 U.S.C. § 859(a), it is tempting to adopt the sketchy findings of the court below. However, because those findings do not provide us with a sound basis upon which to agree or disagree with the conclusions reached therein, we have performed our own review of the record. We find that even though the military judge instructed the members of the court-martial that they alone were to determine the credibility of the witnesses who appeared before them—that they were not required to accept the opinions rendered on the stand by any expert witnesses—we have no way to determine whether the court members gave any or great weight to the inadmissible testimony. Accordingly, we cannot say that it did not prejudice a material right of this appellant. *See* Art. 59(a). Having decided the first granted issue in favor of appellant, we need not resolve the second.

The decision of the United States Air Force Court of Military Review is reversed. The findings and sentence are set aside. The record of trial is returned to the Judge Advocate General of the Air Force. A rehearing may be ordered.

Chief Judge EVERETT and Judge SULLIVAN concur.