## UNITED STATES

v.

**Sergeant Roberto TORO, Jr., FR070–64–9111 United States Air Force.**

**ACM 28653.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 13 March 1990.

Decided 19 Dec. 1991.

---

Appellate Counsel for the Appellant: Captain Richard W. Aldrich (argued), Eugene R. Fidell (argued), Paul M. Tendler (argued), Colonel Jeffrey R. Owens, and Major Paul G. Morgan.

Appellate Counsel for the United States: Lieutenant Colonel Brenda J. Hollis (argued), Major Ann M. Mittermeyer (argued), Captain James C. Sinwell (argued), Major Paul H. Blackwell, Jr., and Major Jeffrey C. Lindquist.

Before O'BRIEN, O'HAIR, PRATT and JAMES, Appellate Military Judges.

## OPINION OF THE COURT

JAMES, Judge:

Convicted of divers drug offenses,[1] *appellant* assigns numerous errors that can be categorized as claims of error at trial, a complementary claim that the trial defense counsel's assistance was ineffective, a claim that the sentence is too severe, and a final claim relating to the lack of terms of tenure for the service of military judges and appellate military judges. We also address appellant's interlocutory motion for release from confinement pending appeal. We find no errors requiring relief, and we affirm the conviction and sentence.

Appellant assigned six errors relating to trial counsel's tactics at trial. However,

---

1. Appellant was convicted of the following violations of Article 112a, UCMJ, 10 U.S.C. § 912a (1988): Divers uses of methamphetamine in Korea in 1987 and 1988; divers uses of methamphetamine in Japan in 1988 and 1989; divers uses of methamphetamine in the Philippines in 1989; introduction of methamphetamine onto Yokota Air Base in Japan; distribution of methamphetamine in Japan in 1989; and distribution of methamphetamine in Korea in 1988.

some of his assignments are general statements that, like a Trojan horse, carry many issues. We address each aspect below.

## I. TRIAL COUNSEL'S VOIR DIRE

■ Appellant complains that trial counsel's examination of the court members was improper. *See* R.C.M. 912(d). Trial counsel's examination was extensive, and he did seek to introduce his case to the members through it. Little of it was about the members and their qualifications. Instead, trial counsel covered the mechanics of drug abuse, its frequently social but covert nature, the lengthy history of drug abuse by his witnesses and their other misconduct, much of it reflecting ill on their trustworthiness. He converted his inquiries to permissible voir dire in most cases by asking, after too much discourse, whether the members could or would consider in deliberations the information he summarized.

Though we recognize that to be a widely popular tactic, we disapprove of it. It invites needless and endless controversy, and it risks confusion that counsel's summarization may be recalled as if it were evidence. Such examinations are only tenuously related to the legitimate purpose of voir dire. *See generally*, Air Force Standards for the Administration of Criminal Justice, standard 3–5.3(c) (promulgated 4 December 1989). *Accord*, ABA Standards for the Administration of Criminal Justice, Prosecution Function, standard 5.3(c).[2]

However, no authority makes it error per se.

■ Instead, the military retains its traditional, generous approach which gives great latitude to counsel. *See United States v. Smith*, 27 M.J. 25 (C.M.A.1988). Some of the inquiries, e.g. those related to the credibility of witnesses, have been considered before and found permissible. *See, e.g., United States v. Huntsman*, 22 U.S.C.M.A. 100, 46 C.M.R. 100 (1973). A military judge's ruling on an objection to voir dire is reviewable only for a clear abuse of discretion, and relief is warranted only when prejudice is shown. *United States v. Parker*, 6 U.S.C.M.A. 274, 19 C.M.R. 400 (1955). Absent plain error,[3] we find no abuse of discretion where the military judge only refrained from intervening sua sponte in a process in which counsel are given great latitude. The need for such intervention in this case was dubious. Furthermore, the trial counsel's questions were, as appellate defense counsel observed, "[u]nimpeded by objections." Accordingly, any error was waived. R.C.M. 905(e).

## II. TRIAL COUNSEL'S OPENING STATEMENT

■ Appellant also complains that trial counsel's opening statement was improper because trial counsel commented on the association of the appellant with appellant's girlfriend, Miss Lee. She was the frequent supplier of the drugs abused by appellant and his friends. Appellant also

---

2. The federal civilian criminal courts have the opposite problem. "The rules [Fed.R.Crim.P. 24(a) ] currently authorize federal judges to conduct voir dire examination and vest the judges with discretion as to whether counsel should be permitted to conduct voir dire. In practice, however, few federal judges permit counsel to questions prospective jurors directly." McMillion, *Advocating Voir Dire Reform*, ABA Journal, November 1991, at 114. McMillion described plans for an experimental program in which greater latitude would be given to counsel and stated the two opposing views.

On behalf of the proposal, two witnesses testified before the Senate Judiciary Subcommittee on Courts and Administrative Practice: "The judge does not have the intimate familiarity with the details of the case—details which may

well alert an interrogator to important nuances in juror responses. Counsel, on the other hand, with the knowledge of all elements of the case, will recognize significant problems in answers ... and press essential points with further questioning." *See also United States v. Holt*, 33 M.J. 400, 411 (C.M.A.1991).

Attributed to the Judicial Conference of the United States was the concern with which we are faced in this case, "that voir dire would take on the characteristics of a mini-trial as attorneys use their examination time to 'advocate the case, offer instructions on the law, and otherwise influence or indoctrinate prospective jurors.'"

3. *See generally United States v. Fisher*, 21 M.J. 327, 328 (C.M.A.1986).

complains that trial counsel commented on the offenses of others (his associates who abused drugs, too). *See generally*, R.C.M. 913(b). Once again, we find no error warranting relief.

The first sentence in trial counsel's opening statement set the tone for the remainder:

> [T]he evidence in this case will show that during the two year period between January 1987 and January 1989 the accused virtually lived on methamphetamine, virtually lived on crank.

(Emphasis added.) From that introduction, trial counsel continued to describe in detail the expected testimony of his witnesses. Except in insignificant detail, the evidence was admitted as trial counsel forecast.[4]

Many of the witnesses were drug abusers themselves who abused drugs with the appellant and often with the ubiquitous Miss Lee. In the course of the opening, as in the course of examining each such witness, trial counsel disclosed the details of the witnesses' abuse of drugs and similar matters bearing on their credibility, choosing to disclose them himself instead of permitting appellant the advantage of revealing them through cross-examination.[5] We know of no rule that would confine trial counsel's opening in this setting. As we discuss below, the evidence of other misconduct of the witnesses and the involvement of Miss Lee was inescapable and not inadmissible. Therefore, there was no error when trial counsel described the testimony expected in good faith. R.C.M. 913(b), Discussion. *See generally* annotation, *Prosecutor's Reference in Opening Statement to Matters Not Provable or Which He Does Not Attempt to Prove as Grounds for Relief,* 16 A.L.R.4th 810, § 15 at 875 (1982); 23A C.J.S. *Criminal Law* § 1240 (1989).

4. Thus, while *State v. Williams,* 63 Iowa 135, 18 N.W. 682 (1884), cited by appellant, was instructive and entertaining, it is readily distinguishable.

5. At no point during his opening statement did trial counsel disclose that appellant's colleagues had themselves been convicted. As to this discrete issue, that fact makes appellant's case distinguishable from *People v. Sullivan,* 48 Ill. App.3d 787, 6 Ill.Dec. 462, 362 N.E.2d 1382

We further note that there was no objection at trial to any part of the trial counsel's opening statement.

> The primary purposes for objections are to let the opponent correct the error, to inform the court so it can rule intelligently and quickly, and to reduce the necessity for reversal and new trial.
>
> * * * * * *
>
> It follows from the foregoing rules that except under extreme circumstances, as where the matter involves the jurisdiction of the court, the failure of the accused to avail himself of the opportunity to object at the earliest opportunity to an irregularity of which he has knowledge will be deemed to be a waiver of the objection.

23A C.J.S. *Criminal Law* § 1150 (1989). Therefore, we hold that, absent plain error,[6] objection to improper opening statements is waived if not asserted at trial. R.C.M. 905(e). *Cf.* R.C.M. 920(c). We do not find plain error here.

## III. PRESENTATION OF THE PROSECUTION'S CASE

### A. Human Lie Detector Testimony?

Appellant complains that an agent of the Office of Special Investigations was allowed *to* give his opinion of the credibility of other witnesses who were informants who worked for him. We think appellant tries to make too much of the testimony. He argues the issue as if it involved another version of "human lie detector" testimony forbidden under *United States v. Harrison,* 31 M.J. 330 (C.M.A.1990), and *United States v. Petersen,* 24 M.J. 283 (C.M.A. 1987), but we hardly think the issue is that fancy. Instead, we take the testimony as

(1977), *affirmed,* 72 Ill.2d 36, 17 Ill.Dec. 827, 377 N.E.2d 17 (1978); *State v. Aubuchon,* 381 S.W.2d 807 (Mo.1964); and *State v. Fenton,* 499 S.W.2d 813 (Mo.Ct.App.1973), brought to our attention by appellant chiefly in connection with his complaint that his conviction rested on guilt by association.

6. *See generally Fisher,* 21 M.J. at 328.

relating to a trait of character of a witness, to be considered under Mil.R.Evid. 608(a).

"Human lie detector" testimony states that the witness is telling the truth about the relevant events at trial and thus invades a major function of the factfinder. *Harrison* stated the rule in the terms of that case, which involved allegations of child sexual abuse:

> It is impermissible for an expert to testify about his or her belief that a child is telling the truth regarding an alleged incident of sexual abuse.

31 M.J. at 332. *Petersen* implied that the rule might be broader than child abuse cases, 24 M.J. at 284 ("We are skeptical about whether any witness could be qualified to opine as to the credibility of another."), but, like *United States v. Wagner,* 20 M.J. 758 (A.F.C.M.R.1985), *pet. denied,* 20 M.J. 425 (C.M.A.1985), to which it refers us, *Petersen* also discusses the problem in terms of testimony by *experts* about the credibility of witnesses and impliedly about the *testimony* of those witnesses about the matter at hand.

Character evidence, in contrast, simply states that the witness is *generally* truthful, helping but not preempting the factfinder. In oral argument appellant emphasized that the status of this vouching witness—an investigator—lent some special weight to his testimonial, and that might be true, but admissibility of testimony is not impaired by offering it through a knowledgeable witness, and the OSI agent was never made to seem to be an expert in the psychology of credibility. The more apt criticism of this transaction is that the witness couched his voucher in specific terms (These are among the best informants I've ever worked with), not general. Given that the agent had no other relationship with them, we hesitate to be too critical of the way the agent cast his assessment.

When the testimony is considered under Mil.R.Evid. 608(a), the next issue is whether the witness' credibility had been contested and, if not, whether the issue was waived by failure to object at trial. Mil. R.Evid. 103(a)(1). *See also* R.C.M. 905(e). The testimony did come after the attack, and there was no objection to it. Thus, appellant's assignment is without merit.

## B. Involvement of the Members?

■ Trial counsel asked some of the appellant's cohorts whether they understood that the members could later be called in future prosecutions of the witnesses for perjury, were that to become necessary. When arguing findings, he reminded the members that appellant brought drugs into "your" base. Finally, while arguing sentence trial counsel argued that they should adjudge a dishonorable discharge "because that's what you [the members] deserve because you are members of the United States Air Force." Appellant compounds each of these complaints into a single assignment of error. He argues that trial counsel's method harmed appellant by distracting the members from their duty to be impartial triers of fact and sentence, by stimulating them to see themselves instead as witnesses, victims, and policemen. Once again, we think appellant exaggerates his complaint when he compounds several discrete ideas as if they showed an evil theme. We address each of the components separately below, as claims of error relating to examination of the witnesses, argument on findings, and argument on sentence, and we address them in the continuing chronological approach taken in this opinion.

The questions that appellant now finds objectionable were posed five times, each to different witnesses. In context, they seem to be trial counsel's enthusiastic effort to emphasize to the witnesses—themselves of poor character—the importance of telling the truth. They do not seem to be part of a strategy aimed particularly at involving the members in the prosecution or likely to have that effect. Indeed, on some occasions, trial counsel also referred to the possibility that he or the court reporter might also be called to recount the witnesses' testimony. In short, we think appellant exaggerates both the intent and effect. We further notice no objection made to the questions at trial, and therefore the issue was waived. Mil.R.Evid. 103(a)(1). *See also* R.C.M. 905(e).

**514**

### C. Trial Counsel's Strategy: Guilt by Association

Reaching his major theme, appellant complains, in essence, that trial counsel erred by presenting evidence on the theory that appellant should be found guilty because of his association with Miss Lee and his cohort of fellow drug abusers, some of whom had been convicted by then.[7] The general rule is that "[a] defendant is entitled to be tried on his own without having his guilt prejudged by what has happened to another, it being considered an elementary principle of justice that one man shall not be affected by another's act or admission, to which he is a stranger." *State v. Fenton*, 499 S.W.2d 813, 816 (Mo.App. 1973). We do not take trial counsel's case as based on that theory, or even as involving it to such an extent that prejudice was possible.

#### 1. Revealing the Prior Misconduct, Confessions, and Convictions of Others

Trial counsel brought five of the cohorts to testify that appellant had used drugs with them or supplied drugs to them. As he did, he disclosed through questioning the prior misconduct of each, including that unrelated to the charges against appellant. Each time, trial counsel began his direct examination by disclosing the witness's history of drug abuse and then moved on to disclose the adverse information in each witness' disciplinary history, from nonjudicial punishments for use of marijuana down to reprimands and counselings for bad checks. In the most egregious instance, trial counsel apparently sought to bolster a witness' credibility. He elicited from the witness that many of the people accused by the witness of drug abuse in the same investigation had later confessed when questioned, and trial counsel later showed by that witness and two others that one of the cohort (who did not testify) had been convicted. Inevitably, the prosecution's witnesses disclosed considerable misconduct of their own during their testimony about using drugs with appellant, getting drugs from him, and getting drugs from Miss Lee with him.

 Generally, the fact that other people involved in the same episode have confessed says nothing about the guilt of an accused, and the ultimate confession—a plea of guilty—is inadmissible as proof of guilt of a person other than the one who made it, *e.g.*, *United States v. McLain*, 823 F.2d 1457, 1464–66 (11th Cir.1987); *United States v. Solomon*, 795 F.2d 747 (9th Cir. 1986). It might, however, add something to the credibility of the informant, and that is the obvious purpose for which it was offered here. Such evidence is admissible when offered for a purpose other than proving the accused's guilt, *United States v. Campbell*, 848 F.2d 846 (8th Cir.1988); *United States v. Roth*, 736 F.2d 1222 (8th Cir.1984), *cert. denied*, 469 U.S. 1058, 105 S.Ct. 541, 83 L.Ed.2d 429 (1984); *United States v. Edwards*, 716 F.2d 822 (11th Cir. 1983) (rehabilitating the testimony of the witness whose plea was admitted), *further proceedings at* 795 F.2d 958 (11th Cir. 1986), *cert. denied*, 481 U.S. 1019, 107 S.Ct. 1899, 95 L.Ed.2d 506 (1987).

 However, the prosecution should not reveal the criminal convictions of the accused's co-actors, accomplices, co-accused, and co-conspirators. *See generally*, 23 C.J.S. *Criminal Law* § 996 (1989); annotation, *Prejudicial Effect of Prosecuting Attorney's Remarks, In Opening Statement to Jury, That Another Defendant Has Been Convicted or Pleaded Guilty*, 48 A.L.R.2d 1004 (1956); annotation, *Prejudicial Effect of Prosecuting Attorney's Argument or Disclosure During Trial That Another Defendant Has Been Convicted or Pleaded Guilty*, 48 A.L.R.2d 1016 (1956). The other dispositions have no relevance to the accused's guilt, and the risk of prejudice can be significant. However, here, as in the instance of the confessions of others, there is no error if the

---

7. *Compare United States v. Corbett*, 29 M.J. 253, 258 (C.M.A.1989) (Cox, J., concurring and dissenting), *cert. denied*, 493 U.S. 978, 110 S.Ct. 506, 107 L.Ed.2d 508 (1989), *with United States v. Rounds*, 30 M.J. 76, 82 (C.M.A.1990) (Cox, J., concurring), *cert. denied*, —— U.S. ——, 111 S.Ct. 130, 112 L.Ed.2d 98 (1990).

evidence is not admitted to prove the accused's guilt by the adjudication of his associate. *Campbell*, 848 F.2d 846; *Roth*, 736 F.2d 1222. The proposition for which the other conviction was offered was clearly to show that the testimony of the witness in the present trial was credible because it had been verified by the confessions and later convictions of those whom he accused.

■ To resolve this problem, we turn to the structured analysis offered in *United States v. King*, 505 F.2d 602, 607 (5th Cir. 1974), and widely cited in the cases discussing this sort of problem. First we examine the facts and circumstances of the case in their context. The only available witnesses to the essential events were the appellant's cohorts, and their drug abuse during those events was obviously subject to investigation and prosecution. The ideas that some of them had "turned" and accused others and that some of them had confessed when questioned are hardly shocking. The fact that some of them had confessed was elicited during direct examination before credibility had been attacked on cross-examination, but that attack was inevitable: Credibility was the only defense strategy. The fact that one of the cohort had already been convicted was elicited on redirect, after credibility of the witness concerned had been attacked on cross-examination. Next we turn to whether instructions were given or waived. We would have expected that the defense counsel would have asked for and the military judge would have given a limiting instruction, but they did not. The confessions and the conviction were not as greatly emphasized as appellant would suggest by his appellate rhetoric. Indeed the three references to the conviction were all fleeting, and the description of the other confessions was minimal. No one suggested the simplistic syllogism that others had confessed or been convicted and therefore the appellant must also be guilty. There was no objection at trial, and that is likely the result of the defense's decision to let that matter pass quickly. Under these circumstances, we conclude that if the omis-

sion of an instruction was error, it was harmless beyond a reasonable doubt. We do not encourage admission of this sort of evidence, but we do not find it to constitute an abuse of discretion in this case.

2. Prior Consistent Statements.

■ We now turn to yet another issue that results from trial counsel's tactics: Was it error to admit against the appellant the prior inculpatory statements made by the witnesses? Trial counsel introduced several such statements [8] as prior consistent statements after the defense sought on cross-examination to show the witnesses' prior inconsistencies. Mil.R.Evid. 613, 801(d)(1). Trial counsel's tactical coup had significant value because it put 19 written statements from his witnesses into the hands of the court-martial whose members could take them—unlike oral testimony—into deliberations, thus giving permanence to the testimony that oral testimony would otherwise lack. It was a clever maneuver that trial counsel had obviously planned: By disclosing the misconduct of the witnesses on direct, he deprived defense counsel of the fodder for cross-examination in most areas other than prior inconsistencies. When the defense waded into that swamp, it probably waded into a trap, but there appears from the record to have been little choice for the defense but to make whatever dents in the credibility of the prosecution's witnesses it could make. However, neither the sparse opportunity for defense strategy nor the trial counsel's cleverness make the gambit illegal. The cited rules provide for the maneuver, and trial counsel did no more than to make the most of his opportunities.

■ In this connection we have also considered whether those statements should have been admitted. They were given to investigators *after* the declarants had become aware that they were themselves suspects, a time when it is not unknown for members of the drug subculture to try to "buy" their way out of trouble with information; they had a motive to sing, and no particular motive to sing truly.

---

**8.** Prosecution exhibits 8, 9, 10, 11, 12, 14, 15, 16, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28.

"Most courts have read into the provision [Mil.R.Evid. 801(d)(1)(B) and its civilian counterpart, Fed.R.Evid. 801(d)(1)(B)] the traditional requirement that the prior statement had been made prior to the time at which a motive to falsify testimony would have arisen." S. Saltzburg, L. Schinasi, D. Schlueter, *Military Rules of Evidence Manual* 614 (2d ed. 1986).

▆ The drafters' analysis that accompanies Mil.R.Evid. 801(d)(1)(B) acknowledges the civilian judicial limitation on the civilian federal rule but does not tell us what the President's intent was when he promulgated the Military Rules of Evidence under his authority under Article 36(a), UCMJ, 10 U.S.C. § 836(a) (1988). (The federal circuits were then split.) The Court of Military Appeals had also noticed the controversy in *United States v. Hurst*, 29 M.J. 477 (C.M.A.1990), decided just days after this trial, but it had not resolved it until a month after this trial was over, in *United States v. McCaskey*, 30 M.J. 188 (C.M.A.1990), holding that such statements may not be admitted unless made before a motive to fabricate has arisen. *See also United States v. Morgan*, 31 M.J. 43 (C.M.A.1990). *McCaskey* gives no direction on whether its approach should apply retroactively to a case like appellant's, tried when the matter was not settled. We see the *McCaskey* approach as a significant departure from the plain words of the rule, and, in the absence of an objection at trial, *cf. Morgan*, 31 M.J. 43, we are not disposed to apply it retroactively to appellant's case.[9]

Until *McCaskey*, Air Force practice was governed by *United States v. Nelson*, 21 M.J. 711 (A.F.C.M.R.1985), *affirmed*, 25 M.J. 110, *cert. denied*, 484 U.S. 1061, 108 S.Ct. 1016, 98 L.Ed.2d 982 (1988). *Nelson* held, as Saltzburg *et al.* noted at the cited passage in their *Manual*, that the question

is really one of relevance, a test as to which reasonable people can come to many positions.

Such a decision by the military judge (assuming a timely objection) would be reviewable for abuse of discretion. *E.g., United States v. Orsburn*, 31 M.J. 182, 187 (C.M.A.1990). The prior statements in this case were, of course, mainly repetitions of the in-court testimony. Thus, their greatest hazard was cumulativeness, a matter as to which military judges are given considerable latitude. The permanence—consideration of these written statements during the deliberation—was tactically valuable, as we noted above, but the value was little more than to memorialize the in-court testimony. Thus, in this pre-*McCaskey* case we are unwilling to find that it was an abuse of discretion to admit them, and we are even less willing to find plain error in the decision to do so, especially in the absence of an objection at trial. Mil.R.Evid. 103(a), (d). The law of prior consistent statements was, at the time of this trial, permissive enough to permit trial counsel's gambit.

▆ We also note that trial counsel's maneuvers stayed clear of the hazard of admitting confessions of others that deny confrontation to the accused. *See Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). In each instance, these statements were given by persons who appeared at trial as witnesses and waived their rights to silence by testifying, making themselves fully available for cross-examination. *See* Mil.R.Evid. 306. There was no denial of the right to confrontation.

### 3. Miss Lee

▆ Miss Lee was as ubiquitous in the evidence as she appears to have been in appellant's life, and her distributions and

---

9. *McCaskey* remarked, "This evolutionary background of Fed.R.Evid. 801(d)(1)(B) ... convinces us that its counterpart, Mil.R.Evid. 801(d)(1)(B), generally was *intended* to be limited to prior consistent statements made before the alleged recent fabrication ...," 30 M.J. at 192 (emphasis added), suggesting that retroactivity would be appropriate because the rule was never intended to be as it was finally disclosed

to be in *McCaskey*. Were we to take that approach, we would find that the defense waived any objection by its failure to object at trial. Mil.R.Evid. 103(a). Later, when considering appellant's argument that his counsels' several waivers were ineffective assistance, we would excuse this particular waiver because the law was hardly as clear before *McCaskey* as it has become since.

uses of drugs were part of the course of transactions that made up this case. It is only coincidental (but still relevant) that many named Miss Lee as the source for much of the drugs abused and often present when they were used. Her activities were an intricate part of the proof of the accused's own drug abuse because he was involved in them. They were part of the circumstantial case against him and entirely relevant and admissible.

Appellant was not convicted because he was associated with proven drug abusers or with Miss Lee; he was convicted because the evidence that he abused drugs was overwhelming.

### D. Use of a Blackboard Not Admitted

 Appellant argues that the record of trial is incomplete because it includes no description or picture of a blackboard that trial counsel used throughout the trial. Article 54(c), UCMJ, 10 U.S.C. § 854(c) (1988). *See United States v. Sneed*, 32 M.J. 537 (A.F.C.M.R.1990); *United States v. Kyle*, 32 M.J. 724, 725–26 (A.F.C.M.R.1991). From that premise, he argues that we may approve no more of the sentence than that for which a summarized record is permissible, substantially less than that adjudged and approved below. *Compare* Article 54(c)(1) *with* Article 54(c)(2).

While the code prescribes that appellant's record must be "complete," the details of what constitutes "complete" have been left in part to the President's rule-making. The required contents of a record are stated at R.C.M. 1103(b)(2) and (3). *Exhibits* must be included in the record (or substitutes for them). R.C.M. 1103(b)(2)(D)(iv). Exhibits are included be-

cause they are evidence. However, the blackboard was not an exhibit. It was a summarization of the case and testimony made by trial counsel as he went along, but it was not evidence itself. Accordingly, there was no need to mark it, move its admission, or designate it as an exhibit by number or letter.

The blackboard never was marked as an exhibit, and properly so. Because it wasn't, there was never the chance for its admission to be denied, and so there was no need to include it in the record as an exhibit moved but excluded. R.C.M. 1103(b)(3)(B).

The blackboard was never evidence itself. It was simply an illustration or graphic aid. Such aids are not required by R.C.M. 1103(b)(2) or (3) to be included in the record to constitute a "complete" record.[10] The record is not incomplete.[11]

### IV. TRIAL COUNSEL'S ARGUMENT ON FINDINGS

Appellant has two complaints about trial counsel's argument on findings. First he complains that trial counsel alluded to the situs of one of the crimes as "your Air Force base," and next he complains that trial counsel's argument as to the accomplice testimony instruction was improper. We address each issue separately below.

 Trial counsel argued findings twice, first in detail for 12½ pages, and then, after a brief page and a half in rebuttal, he closed—

Gentlemen, you've had all the evidence you need. Tons of evidence. And in your gut you know. You know what the answer is. The answer is that that man

---

**10.** This is consistent with what appears to be the prevailing practice in civil litigation. *See* annotation, *Counsel's Use, in Trial of Personal Injury or Wrongful Death Case, of Blackboard, Chart, Diagram, or Placard, Not Introduced into Evidence, Relating to Damages,* 86 A.L.R.2d 239 (1962); annotation, *Counsel's Use, in Trial of Condemnation Proceeding, of Chart, Diagram, or Blackboard, Not Introduced into Evidence ...,* 80 A.L.R.2d 1270 (1961); annotation, *Counsel's Use, in Trial of Negligence Case, of Chart or Diagram, Not Introduced into Evidence, Relating to Damages,* 44 A.L.R.2d 1205 (1955).

**11.** We hasten to add that the blackboard could easily have become an appellate exhibit if there had been any controversy about its use. For example, had the military judge overruled a defense objection concerning the appearance of the blackboard (including what was written on it), it would have been necessary to make a record on the objection adequate that we could review it on appeal. That could be done by describing the blackboard and the objectionable aspects of its appearance or use, or by photographing it, or both.

sitting across from you is guilty of the wrongful use of crank on 60 occasions. Of the wrong distribution of crank on two occasions at least. And the wrongful introduction of crank onto your Air Force base. Thank you.

The court-martial was tried at Yokota Air Base in Japan. The members were (we surmise from their organizational zip codes) all from that base. The charge to which trial counsel alluded alleged introduction of methamphetamine onto Yokota Air Base. The argument was factually correct.

▇▇▇▇▇ However, factual correctness is not enough to save an argument that is calculated to induce the members to abandon rationality if there is a fair risk that they did. This example of forensic adventurism personalized the allegations, and we think there is some risk that such a tactic could succeed in doing so generally, but not here. Here the comments could at worst only remind the members of the coincidences of geography already acutely obvious after a lengthy trial. Not every reference to the locale and community must be forbidden on pain of retrial,[12] and this one is so brief, so quickly passed that we hold that the military judge did not err by not giving an instruction sua sponte. *United States v. Nelson*, 1 M.J. 235, 237–39, n. 6 238 (C.M.A.1973). The argument drew no objections, so any error was waived. R.C.M. 801(g), 905(e), 919(c).

▇▇▇ Appellant also brings to our attention the prior, unpublished decision of a panel of this Court in *United States v. Stafford*, ACM 28715, 1991 WL 35774 (A.F.C.M.R. 20 February 1991), relating to the accomplice testimony instruction, and complains that trial counsel misstated that instruction in his closing argument:

Listen to that accomplice instruction and remember this. Remember this; that the accused and the people who testified against him are accomplices only if they used with the accused. If they didn't use with the accused, they are not accomplices. It's only when you conclude that they have used crank, methamphetamine, with the accused that they become accomplice's to the accused's crime.

In *Stafford* our brothers found erroneous the instruction that—

a witness is an accomplice only if you believe that the accused is *guilty*....
Emphasis added. Appellant argues that the trial counsel's argument, "used with the accused," is tantamount to "accused is guilty" in *Stafford* and should reap the same remedy.

We disagree. Argument is not of the same importance as instructions. A minor misstatement in argument can be overlooked, and, without an objection, is likely to be waived, as this issue was, R.C.M. 801(g), 905(e), 919(c), if indeed there was any error. An error in instructions can also be waived by failure to object, but this error is so fundamental in the instructions that our brothers in *Stafford* found it to constitute plain error not waived by failure to object at trial. Is the trial counsel's argument in this case of the same character? We think not.

First, the correct statement of law was given in the military judge's later instructions that "a witness is an accomplice if he was criminally involved in an offense with which the accused is charged." Second, his instructions also included the admonition that "I will give you the law," and "I will give you general guidance on evaluating the witnesses' testimony," and "the arguments of counsel ... are not evidence." These two measures attenuated and presumably overcame any confusion that might have flowed from trial counsel's ar-

---

12. *Compare* arguments that seek to induce a jury to meet the supposed expectations of their community that the jury will convict, annotation, *Prejudicial Effect of Prosecuting Attorney's Argument to Jury that People of ... Community Want or Expect a Conviction*, 85 A.L.R.2d 1132 (1962); arguments in which various, repeated, persistent, or pervasive abuses compound the damage into plain error requiring correction despite waiver, *e.g.*, *People v. Fielding*, 158 N.Y.

542, 53 N.E. 497 (1899); arguments in which unproven tax expenses are brought to the attention of the jurors as taxpayers, *e.g.*, *Taylor v. State*, 123 Fla. 358, 166 So. 825 (1936), and annotation, *Counsel's Appeal in Criminal Case to Self-Interest of Jurors as Taxpayers, ...*, 33 A.L.R.2d 459 (1954). The arguments in this case approached none of those landmarks of error.

gument. Third, trial counsel's argument did not so misstate the law as to present the problem in *Stafford*, that the members might be required to adjudicate guilt before considering credibility. Trial counsel's argument did not address guilt, but only the circumstances. Thin as the line might be, it was not crossed here. There was no error.

## V. TRIAL COUNSEL'S SENTENCING ARGUMENT

Trial counsel remarked in sentencing argument that the members "deserved" that appellant receive a dishonorable discharge. Trial counsel also argued that the accused was "a disgrace" who had not "acknowledged [the members'] findings."

■ To argue to the members that they "deserve" that an accused receive a punitive discharge is consistent with the objective of that punishment: It distinguishes those whose separations from the Service have been under unsatisfactory circumstances from those whose separations follow years of faithful and unblemished service. The punitive effect of so discriminating and labeling punitive separations is simply the reflection of discriminating and labeling unblemished service. Just as the trial counsel's argument suggests, the value of complimentary characterizations of separation would be entirely deflated if the separations of criminals were not appropriately characterized. In that sense, the trial counsel's argument is entirely correct. Though it personalized the interest of the members in the sentence, it did not invite any departure from rational decisionmaking. *Cf. United States v. Shamberger*, 1 M.J. 377 (C.M.A.1976). We do not condone it, because the trier of sentence should not personalize the task, but we do not find that it was error.[13]

■ Appellant's second complaint about the sentencing arguments presents another of the endless variations by which trial counsel seek to bring attention to the unrepentant state of mind of an accused, this time by stating that appellant did not "acknowledge" the members' findings. His situation lies somewhere in the area confined by *United States v. Johnson*, 1 M.J. 213 (C.M.A.1975), *United States v. Gibson*, 30 M.J. 1138 (A.F.C.M.R.1990), and *United States v. Chaves*, 28 M.J. 691 (A.F.C.M.R. 1989).

This argument is immediately distinguishable from that in *Johnson*, wherein there was direct, explicit comment about the fact that the accused had pleaded not guilty. *See also United States v. Turner*, 30 M.J. 1183 (A.F.C.M.R.1990); *United States v. Jones*, 30 M.J. 898 (A.F.C.M.R. 1990). "Has not acknowledged your findings" brings attention to refusal to admit defeat, not to the legitimate choice to fight.

In *Chaves* we held erroneous an instruction that the members could consider the accused's failure to express remorse when deliberating on sentence. *Chaves*, however, was about instructions, not argument. We have declined to extend the *Chaves* idea to argument. *Gibson*, 30 M.J. 1138; *United States v. Ryder*, 31 M.J. 718 (A.F.C.M.R.1990); *United States v. Kilbourne*, 31 M.J. 731 (A.F.C.M.R.1990).

Finally, this case is not one in which trial counsel argued that the accused must admit guilt before becoming eligible for rehabilitation. *Gibson*, 30 M.J. 1138; *Jones*, 30 M.J. 898.

The trial counsel's remarks in this case appear not to have broken any rules, but we also note that the arguments drew no objections, so any error was waived. R.C.M. 801(g), 905(e), 919(c), 1001(g); *United States v. Sherman*, 32 M.J. 449 (C.M.A. 1991).

## VI. EFFECTIVE ASSISTANCE OF COUNSEL

■ Having brought our attention to a variety of claimed errors, all of which were waived by failure of the trial defense counsel to object, *appellant* now points to those waivers as the mistakes that show ineffectiveness of defense counsel amounting to a denial of the Sixth Amendment right to

---

**13.** We have not found precedent on exactly this argument, except to discover that a very similar argument is recorded in *United States v. Sturdi-* *vant*, 9 M.J. 923, 927 (A.C.M.R.1980) but not evaluated.

counsel under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See generally, United States v. Barnard,* 32 M.J. 530 (A.F.C.M.R.1990), *pet. denied,* 33 M.J. 484 (C.M.A.1991).

The first step in the *Strickland* analysis requires that we examine the defense counsel's decisions. These decisions have a uniform explanation readily apparent from the record: The defense wished to focus on the inherent lack of credibility of the prosecution's witnesses. Thus, the trial counsel's efforts to explain away their deficiencies entailed necessarily repeated disclosures of those deficiencies. Each time trial counsel dealt with the subject on voir dire, in opening statement, and on the merits he renewed the court-martial's attention to the central, unifying theme of this case: The witnesses were themselves long term drug abusers deeply rooted in the criminal milieu, not to be trusted except perhaps after careful evaluation. No wonder the defense had no objections.

Furthermore, we have disposed of many of the foregoing issues on *both* waiver and on grounds *other* than waiver. Even the question whether the prior consistent statements should have been admitted, but for the absence of an objection, is not such obvious error that we would call the choice not to object a *Strickland* ineffectiveness. Thus, it is fair to say, with the hindsight of appellate decision our advantage, that few of the trial decisions of which appellant now complains were errors. There was no deficiency in trial defense counsel's representation.

However, we can also skip the first step in the *Strickland* analysis and go straight to the second: Is there prejudice? The evidence in this case was overwhelming. The drug abuse being in this case a social activity, all of appellant's cohorts were called and made to testify against him. Even if one clipped out all the tactical gimmickry of the trial counsel, a conviction

remained inevitable, and the sentence is not excessive, as we must discuss below.

## VII. SUFFICIENCY OF THE EVIDENCE

■ Appellant moved to file statements from two of his companions in post-conviction confinement. He cited as his authority for thus supplementing the record Article 66(c), UCMJ, 10 U.S.C. § 866(c) (1988), and *United States v. Grostefon,* 12 M.J. 431 (C.M.A.1982).[14] We now address his motion, the two statements, and the issues of evidentiary sufficiency that have been raised in them.

Appellant's purpose in bringing the two statements to our attention is to further contest the credibility of the witnesses at trial. However, the record may not be supplemented for that purpose. Instead, Article 66(c) limits us to "the entire record." *United States v. Dickerson,* 6 U.S.C.M.A. 438, 20 C.M.R. 154 (1954); *United States v. Whitman,* 3 U.S.C.M.A. 179, 11 C.M.R. 179 (1953); *United States v. Gordon,* 2 U.S.C.M.A. 632, 10 C.M.R. 130 (1953). Accordingly, we have not considered the statements when addressing the issues of sufficiency of the evidence.[15]

■ "The test for [legal sufficiency] is whether, considering the evidence in the light most favorable to the prosecution, a reasonable fact-finder could have found all the essential elements beyond a reasonable doubt." *United States v. Turner,* 25 M.J. 324, 324 (C.M.A.1987) (citing *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The test for factual sufficiency is "whether, [we] are [ourselves] convinced of the accused's guilt beyond a reasonable doubt." *United States v. Turner,* 25 M.J. 324, 325 (C.M.A.1987). We have applied both tests, as we are required to do by Article 66(c), UCMJ, 10 U.S.C. § 866(c) (1988). We have taken into consideration that the convictions rest on the testimony of other drug abusers. *United States v. Ladell,* 30 M.J. 672, 674 (A.F.C.M.R.1990). We find that the evidence was sufficient as a matter of law to

---

**14.** Appellee opposed the motion timely. We deferred our decision on the motion until now to assure that, in this complicated case, we had before us as much as might become available before we decided whether to grant the motion.

**15.** To this extent, appellant's motion to file documents, dated 6 September 1991, is denied.

sustain the findings of guilt, and we are ourselves convinced beyond a reasonable doubt that appellant is guilty as convicted.

■ However, appellant's motion and the statements might be taken (if very generously considered) as a layman's petition for a new trial under Article 73, UCMJ, 10 U.S.C. § 873 (1988) and R.C.M. 1210 on the grounds of fraud on the trial court. Both authorities require that such a petition be filed with The Judge Advocate General, even when this Court has jurisdiction of the case. R.C.M. 1210(c) prescribes the form of such petitions, and this one does not comply. Finally, we do not find the two statements to be the kind of evidence that "would probably produce a substantially more favorable result for the accused," R.C.M. 1210(f)(2)(C), or that the fraud now alleged "had a substantial contributing effect on a finding of guilty," R.C.M. 1210(f)(3). *See United States v. Giambra*, 33 M.J. 331 (C.M.A.1991). A new trial is not warranted.[16]

## VIII. SENTENCE APPROPRIATENESS

■ Appellant also argues that his sentence was inappropriately severe. He was sentenced by the members to be discharged from the service with a dishonorable discharge, confined for 7 years, forfeiture of all pay and allowances, and reduction to E–1. We have examined the entire record, *United States v. Healy*, 26 M.J. 394 (C.M.A.1988), the convictions, and the sentence, giving due consideration to the characteristics of this offender and to the crimes of which he was convicted. We note that he was sentenced for divers drug offenses over a 2–year period in three different countries, including introduction, distribution, and use of methamphetamine. We take notice of the lengthy history of this Court's acknowledgements of the seriousness of drug crimes, *see, e.g., United States v. Baker*, 2 M.J. 360 (A.F.C.M.R. 1977), and our insistence that the penal hazards are widely known, *see, e.g., United States v. Holt*, 28 M.J. 835 (A.F.C.M.R. 1989). One who persists despite the explicitly clear warnings, now emphatically declared, does so at his own risk that, as the plague continues, triers of sentence will express the ever increasing disapproval of the community. We are satisfied that the sentence is not inappropriate. *Healy*, 26 M.J. 394; *United States v. Wingart*, 27 M.J. 128 (C.M.A.1988); *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A.1982); *United States v. Ciulla*, 29 M.J. 868 (A.F.C.M.R.1989), *aff'd*, 32 M.J. 186 (C.M.A.1991), *cert. denied*, — U.S. —, 112 S.Ct. 172, 116 L.Ed.2d 135 (1991).

## VIII. PETITION FOR HABEAS CORPUS DURING APPEAL

■ During the pendency of the appeal in this case, appellant petitioned this Court for extraordinary relief in the nature of habeas corpus. In short, he sought release from post-conviction confinement during appeal. We have authority under the All Writs Act, 28 U.S.C. § 1651 (1988) to fashion such relief, *Moore v. Akins*, 30 M.J. 249 (C.M.A.1990), but we did not find it necessary to do so.

The following chronology summarizes the factual background of this issue:

| Date: | Event: | Since Sentenced | Since Rec'd | Interval |
|---|---|---|---|---|
| 13 Mar 90 | Appellant sentenced | 0 days | | |
| 25 Jun 90 | Record rec'd TJAG | 104 days | | |
| 27 Jun 90 | Both counsel appeared | 106 | 0 days | |
| 22 Feb 91 | Last defense brief | 346 | 242 | 242 days |
| 23 May 91 | Petition for habeas | 436 | 332 | 90 days |
| 28 Jun 91 | Government replied | 472 | 368 | 119 days * |

(* From last defense brief.) We find it ironic and disturbing that appellant would so long delay his most important step in our Court and then, after passage of much less than half the time he needed, claim foul and demand release when his opponent had not yet replied.

16. Accordingly, taking the motion as for a new trial, it is denied.

Such a petition was recently addressed by our sister, the Coast Guard Court of Military Review, in *Addis v. Thorsen*, 32 M.J. 777 (C.G.C.M.R.1991). Chief Judge Baum's excellent analysis in that case persuaded us that such a petition may warrant relief only when the petitioner has previously applied to the convening authority for deferment of the adjudged confinement. *See generally* Article 57(d), UCMJ, 10 U.S.C. § 857(d) (1988); R.C.M. 1101(c). Appellant did not do so.

Appellant argues that he should not be required to undertake a fruitless effort. He reports that the same convening authority had already announced in unrelated cases that he lacked authority to defer confinement after action. Assuming that report to be accurate, the convening authority's impression of his authority was mistaken. *Moore v. Akins*, 30 M.J. at 251–52. *Moore* was decided 3 months after appellant was convicted, but also 3 months *before* the convening authority acted in this case. Thus, when we view *Moore* as the proclamation of a new idea, we conclude that appellant had plenty of time to learn of it and to inform the convening authority of the actual extent of his authority.

■ To make our point explicit, we hold that an appellant must ask the convening authority for the relief the appellant seeks before that appellant may appeal for extraordinary relief from a denial by that convening authority. R.C.M. 502(d)(6) ("Defense counsel shall represent the accused....."). This appellant never asked and never brought to the convening authority's attention the extent of the authority to defer that was revealed in *Moore*. He has shown no reason to be relieved from the consequences of his failure, which leads under *Addis* to denial of his petition. Ac-

cordingly, we denied his petition. We will not entertain appeal by ambush any more readily than we will permit trial by ambush.

## IX. MILITARY JUDGES, APPELLATE MILITARY JUDGES & TENURE

■ Appellant also assigns as error that he was tried by a court-martial the military judge of which lacked tenure and that his appeal must be decided by appellate military judges who lack tenure. *See generally*, Articles 26 and 66, UCMJ, 10 U.S.C. § 826 and 866 (1988).

The Supreme Court of the United States has twice taken note of this difference in our system, but neither time has it been critical. In *United States ex rel. Toth v. Quarles*, it wrote,

> "[F]or instance, the Constitution does not provide life tenure for those performing judicial functions in military trials. They are appointed by military commanders and may be removed at will."

350 U.S. 11, 17, 76 S.Ct. 1, 5, 100 L.Ed. 8 (1955). *See also Palmore v. United States*, 411 U.S. 389, 404, 93 S.Ct. 1670, 1679, 36 L.Ed.2d 342 (1973).[17]

Once again we are fortunate to have the help of our sister court, here the Navy–Marine Corps Court of Military Review. It has reviewed the issue in its order in *United States v. Graf*, 32 M.J. 809 (N.M.C.M.R. 1990), apparently the first published opinion to examine the issue closely. Like our sister, we hold that there is no constitutional right of a military accused to be tried only in a court-martial the military judge of which enjoys tenure or to have his appeal decided by a court of military review the appellate military judges of which enjoy tenure.

With commendable diligence and can-

17. Appellant brought to our attention that the judges whose terms were examined in *Palmore* enjoyed fixed terms of 15 years, much unlike military trial and appellate judges, who have no such terms. We do not hold *Palmore* to its facts. We read it broadly enough to predict that the Supreme Court would find our system constitutionally satisfactory.

dor,[18] appellant brings our attention to our prior (unpublished) decision in *United States v. Rivera*, ACM 24487 (A.F.C.M.R. 24 May 1985) (per curiam), *affirmed*, 23 M.J. 89 (C.M.A.1986), *cert. denied*, 479 U.S. 1091, 107 S.Ct. 1302, 94 L.Ed.2d 157 (1987). We wrote then,

> Whether or not to require any sort of tenure or term of office for military judges, on either the trial or appellate level, is a matter of policy to be determined by Congress, the President, or the Department of the Air Force. However, until such time as that occurs, this issue is without merit.

We have considered appellant's comparative law argument, and we have considered also the oddly scattered protections of this Court and trial courts-martial,[19] but we inevitably return to our conclusion in *Rivera:* This is a legislative matter. Nothing has changed.

The findings of guilty and the sentence are correct in law and fact and, on the basis of the entire record, they are

AFFIRMED.

Chief Judge O'BRIEN and Senior Judge PRATT concur.

Senior Judge O'HAIR did not participate.

---

18. *See* Air Force Rules of Professional Responsibility, rule 3.3(a)(3) (1989). *Accord,* ABA Model Rules of Professional Conduct, rule 3.3(a)(3) (1983).

19. For examples, both trial courts-martial and the courts of military review are protected from coercion and unlawful influence by Article 37(a), UCMJ, 10 U.S.C. § 837(a) (1988), but only military judges—not appellate military judges—enjoy the fitness report protection of Article 26(c). Instead, the protection of appellate military judges extends only to comments by another appellate military judge. Article 66(g), UCMJ, 10 U.S.C. § 866(g) (1988). Thus, while a trial judge's decision may not be considered in performance reports and assignments, presumably an appellate judge's may. We also note that the Court of Military Appeals is "located for administrative purposes only in the Department of Defense," Article 141, UCMJ, 10 U.S.C. § 941 (Supp. I 1990), but the courts of military review are required by the statute to be established and manned by "each Judge Advocate General," Article 66(a). To some extent, these differences reflect the evolution of the code, and its oddities are mere vestiges of its past. Our sole point today is that such oddities remain lawful choices of the Congress, and therefore they are not ours to change.